## Commonwealth *v.* Reece, Appellant.

Argued November 17, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*D. Barry Gibbons,* with him *Gibbons and Buckley,* for appellant.

*William H. Lamb,* Assistant District Attorney, with him *Norman J. Pine,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, March 20, 1970:

Robert Thomas Reece was arrested in Chester County and charged with violating The Drug, Device and Cosmetic Act,[1] specifically, the illegal possession of marijuana. Pretrial, Reece filed a timely motion to suppress certain evidence, i.e., a quantity of marijuana seized by the police in connection with his arrest. After a hearing, this motion was denied. Later, the challenged evidence was introduced at trial over objection. The jury returned a guilty verdict. Post-trial motions in arrest of judgment or for a new trial were dismissed, and a sentence was imposed. An appeal to the Superior Court resulted in an affirmance of the judgment by an equally divided court. We granted allocatur and now reverse.

The pertinent facts supported by the record are briefly these:

The Tredyffrin Township Police Department in Chester County, acting on information received that a "pot party" would take place in a certain apartment in the township on December 9, 1967, secured a search warrant authorizing a search of the apartment.[2]

Pursuant to this warrant, police officers entered the apartment at approximately 7:30 p.m. on December 9, 1967, and proceeded to conduct a search of the premises. A thorough search revealed only a minute residue of amphetamine powder found in a small ball of cotton.

---

[1] The Act of September 26, 1961, P. L. 1664, §4, 35 P.S. §780-4.

[2] The validity of the search warrant is not contested, nor is the legality of the search questioned on the ground that it occurred at 7:30 p.m., rather than during the daytime as the warrant specifically authorized. But see, *U. S. ex rel. Boyance v. Myers,* 398 F. 2d 896 (1968).

During the course of the evening (between 8:00 p.m. and 12:30 a.m. of the following morning) approximately fifteen people arrived at the apartment—all of whom were searched by the police. Some were found to be carrying narcotic drugs, while others were not. Charges were preferred against those who were found to be in possession of such drugs.

The critical minutes in this case began at 12:30 a.m. on the morning of December 10, 1967, with a knock on the apartment door. The door was slightly ajar and after the knock, Reece and a friend entered the apartment. A police lieutenant, dressed in street clothes, was standing directly inside the doorway. One of the two told him that they were looking for some friends who were supposed to be at the apartment. Thereupon, the lieutenant identified himself by name, rank and position in the police department, read to them from a printed card the "Miranda" warnings[3] and asked them if they understood what he had said (while his words were addressed to both, we will focus hereinafter on what was said and done to Reece). Reece acknowledged that he understood his rights. The lieutenant next told him that his clothing and person would be searched. At this point, the lieutenant took possession of the coat Reece was *wearing*. (By his own testimony the lieutenant is uncertain whether he asked Reece to remove his coat or simply took it from him.)

_____

[3] Although the exact wording of the card was not introduced into the record, the officer did testify that the "entire wording from the *Miranda* decision" was read to Reece. Taken literally, we would have to assume that the officer was reading from a very large card indeed. Yet, in reality, it seems reasonable to conclude that Reece was warned that he had a right to remain silent; that anything he said might be used in evidence against him; that he had a right to the presence of an attorney either retained or appointed; and, that if he was willing to give a statement he had a right to stop anytime he wished. *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966).

The police lieutenant then proceeded to search the coat while another officer searched Reece's person. In a pocket of the coat a small amount of marijuana was found. Reece was immediately placed under arrest. On the basis of the marijuana found in the coat, a search warrant was subsequently secured authorizing a search of the apartment where Reece resided. In the course of a search of this apartment, additional marijuana was found and seized. The marijuana seized in the two searches, before related, was used as evidence against Reece at trial. The central question for decision is whether or not the searches and seizures were constitutionally valid, for if such were not the case, evidentiary use of the seized evidence would violate due process of law. *Ker v. California,* 374 U.S. 23, 83 S. Ct. 1623 (1963); *Mapp v. Ohio,* 367 U.S. 643, 81 S. Ct. 1684 (1961).

It is established beyond question that as an incident to a lawful arrest, the person of the individual arrested may be validly searched even in the absence of a search warrant. *Commonwealth v. Ellsworth,* 421 Pa. 169, 218 A. 2d 249 (1966). But an arrest without a warrant is lawful and constitutionally permissible only if the arresting officer has "probable cause" to make the arrest.[4] *Ker v. California,* supra; *Commonwealth v. Ellsworth,* supra. In our view the arresting officer lacked the required "probable cause" to make the arrest in this case, and hence, the incidental search

---

[4] "Probable cause" is said to exist where "the facts and circumstances within their [the police officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense": *Beck v. Ohio,* 379 U.S. 89, 91, 85 S. Ct. 223, 225 (1964); *Commonwealth v. Marino,* 435 Pa. 245, 255 A. 2d 911 (1969); *Commonwealth v. Brayboy,* 431 Pa. 365, 246 A. 2d 675 (1968).

of Reece's clothing and person was likewise unlawful.[5]

The arresting officer had no information whatsoever about Reece before he entered the apartment involved. There was nothing about his demeanor or conduct which would in any way suggest that he was "on drugs", or that he had drugs in his possession; in reality, the only possible basis for the arrest was his appearance on the scene where a "pot party" was expected to occur.

We have previously held that mere presence at the scene of a crime, coupled with a prior criminal conviction, does not constitute probable cause for an arrest. *Commonwealth v. Goslee*, 427 Pa. 403, 234 A. 2d 849 (1967). Here, we have only the former.

But, even more pertinently, the element of "presence at the scene" is not of critical import in drug possession cases. Evidence of this fact is of some weight in proving substantive crimes where the inference might be drawn that an accused was in some way involved in the commission of the crime. But here, the crime which had been committed in the apartment was the possession of narcotic drugs. Reece's appearance there could in no way implicate him in that crime since such a crime by its very nature is unique to the individual. By definition, the possessor is the only person who could commit this crime. Guilt by association thus becomes the rationale of the arrest here. This is unacceptable.

Such reasoning received a strong rebuff in *Sibron v. New York*, 392 U.S. 40, 88 S. Ct. 1889 (1968). In that case, the arresting officer had never seen the de-

---

[5] In view of our disposition, we need not reach the question of whether or not the search was an "incident" to the arrest since it preceded it in time. But see, *United States v. Boston*, 330 F. 2d 937 (2d Cir. 1964); and, *United States v. Skinner*, 412 F. 2d 98 (8th Cir. 1969).

fendant, Sibron, before and had no information concerning him. He had *observed Sibron continually during an eight-hour period* during which time he saw Sibron in conversation with six or eight known narcotics *addicts*. Toward the end of this eight-hour period, the officer observed Sibron enter a restaurant and converse with three more known narcotics addicts there. Sibron was subsequently arrested and searched. The United States Supreme Court (speaking through Mr. Chief Justice WARREN) stated that the prosecution "quite properly abandoned the notion" that probable cause existed at the time of the arrest: "The inference that persons who talk to narcotics *addicts* are engaged in the criminal traffic in narcotics is simply not the sort of reasonable inference required to support an intrusion by the police upon an individual's personal security. Nothing *resembling* probable cause existed until after the search had turned up the envelopes of heroin." *Sibron v. New York,* supra, at 62-63, 88 S. Ct. at 1902. (Emphasis added.) The fruits of the search may not be used as the justification therefor. *Sibron v. New York,* supra.

Nor can the search here involved be upheld as a permissible self-protective search for weapons within the meaning of *Terry v. Ohio,* 392 U.S. 1, 88 S. Ct. 1868 (1968). This conclusion is fortified by the arresting officer's own testimony.

In the first place, such a search is only justified when "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry v. Ohio,* supra, at 27, 88 S. Ct. at 1883; *Commonwealth v. Hicks,* 434 Pa. 153, 253 A. 2d 276 (1969). Moreover, an arresting officer must be able "to point to particular facts from which he reasonably inferred that the individual was armed and dangerous." *Sibron v. New York,* supra, at 64, 88 S. Ct. at 1903. Here, there was nothing about

Reece's conduct or demeanor to warrant a reasonably prudent man in apprehending danger. As the arresting officer himself testified: "I did not give him . . . *any opportunity to give me the impression that* [he] *would endanger me, physically.*" (Emphasis added.)

Since the unlawful search of Reece's clothing was the basis for the issuance of the warrant and subsequent search of Reece's apartment, the fruits of the latter search were equally proscribed as evidence, because it constituted merely an exploitation of the initial illegality. *Wong Sun v. United States,* 371 U.S. 471, 83 S. Ct. 407 (1963).

The order of the Superior Court and the judgment of the court of original jurisdiction are reversed.

Mr. Justice JONES concurs in the result.