254

Commonwealth *v.* Mobley, Appellant.

Argued June 16, 1971. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*John W. Packel,* Assistant Defender, with him *Michael Luber,* Assistant Defender, and *Vincent J. Ziccardi,* Defender, for appellant.

*Milton M. Stein,* Assistant District Attorney, with him *Leonard S. Goodman,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, September 30, 1971:
Judgment of sentence affirmed.

DISSENTING OPINION BY HOFFMAN, J.:

On November 18, 1970, at 10:30 a.m., appellant, a gang control worker for the Philadelphia Urban Coalition, and two other males were observed by police officers conversing with a fourth male on a city street. This fourth male was under surveillance by the Philadelphia police as a suspected drug seller.

Upon the approach of police officers, the reputed drug seller fled. The officers motioned to appellant, who had remained behind with his two companions, to approach them. According to the arresting officer the following took place:

"[Appellant] came walking toward us when we called them over. I observed his coat. In the righthand pocket, there seemed to be a heavy object that was bounding back and forth. I went over to [appellant]. I touched his right pocket to feel what this object was and it felt to me from the outside, to be a revolver. I put my hand inside his coat and withdrew a .22 caliber fully loaded revolver. . . .

"Q. For what reason, if any, did you pat the defendant down?

"A. Well, we stopped the three males. As I said, I seen this bulge in his righthand pocket. I patted him down for my own protection. I had no idea at the time what it was." (N.T. 3, 4)

Appellant was convicted for violation of the Uniform Firearms Act and for carrying a concealed deadly weapon.

On this direct appeal, he urges that his convictions should be overturned because the evidence used against him was the product of an unconstitutional stop and frisk.

To determine the constitutionality of the stop and frisk conducted by the police officers, reference must be made to the standards set forth in *Commonwealth v. Hicks*, 434 Pa. 153, 253 A. 2d 276 (1969) which was

the first Pennsylvania case to apply the principles set forth in *Terry v. Ohio,* 392 U.S. 1, 88 S. Ct. 1868 (1968), *Sibron v. New York,* 392 U.S. 40, 88 S. Ct. 1889 (1968) and *Peters v. New York,* 392 U.S. 40, 88 S. Ct. 1889 (1968). In *Hicks* our Supreme Court stated "for such a precautionary seizure and search to be constitutionally legitimate, there must first exist on the part of the police a reasonable belief that criminal activity is afoot and that the seized person is armed and dangerous. The police must prove *that specific conduct of the seized person, observed by them,* justified and made reasonable their belief that criminal activity was afoot and that the seized person was armed and dangerous." Id. at 160, 253 A. 2d at 280 (emphasis added). These standards were reaffirmed in *Commonwealth v. Berrios,* 437 Pa. 338, 263 A. 2d 342 (1970).

With respect to the belief of the officer that appellant was engaged in criminal activity, the only facts that are advanced by the Commonwealth to support this belief is that appellant was seen talking to a reputed drug seller and that upon being spotted the reputed drug seller fled.

These facts are substantially the same as those present in *Sibron,* supra, where the United States Supreme Court invalidated a stop and frisk. In *Sibron* the police officer continuously observed Sibron talk to a number of known narcotic addicts over a period of eight hours. The officer, as in the instant case, was not acquainted with the person subsequently frisked nor did he have any information concerning him. "He merely saw Sibron talking to a number of known narcotics addicts over a period of eight hours. It must be emphasized that [the officers] was completely ignorant regarding the content of these conversations, and that he saw nothing pass between Sibron and the addicts. So far as he knew, they might indeed 'have been talking about the

World Series'. The inference that persons who talk to narcotics addicts are engaged in the criminal traffic in narcotics is simply not the sort of reasonable inference required to support an intrustion by the police upon an individual's personal security." 392 U.S. at 62, 88 S. Ct. at 1902.

In *Commonwealth v. Reece,* 437 Pa. 422, 263 A. 2d 463 (1970), the above quoted language from *Sibron* was given added dimension. In *Reece,* police entered an apartment having previously been informed that the premises were to be used that evening for the smoking of marijuana. Reece and his friend came to the door of the apartment shortly after midnight, and Reece was arrested and searched. The court suppressed the fruits of the search on the basis that "the element of 'presence at the scene' is not of critical import in drug possession cases. Evidence of this fact is of some weight in proving substantive crimes where the inference might be drawn that an accused was in some way involved in the commission of the crime. But here, the crime which had been committed in the apartment was the possession of narcotic drugs. Reece's appearance there could in no way implicate him in that crime since such a crime by its very nature is unique to the individual. By definition, the possessor is the only person who could commit this crime. Guilt by association thus becomes the rationale of the arrest here. This is unacceptable." 437 Pa. at 427, 263 A. 2d at 466. Nor did the court find that such facts justified a stop and frisk. In this respect the court relied upon *Sibron.*

At the time that the police officer made the stop and frisk in the instant case he had no reason to believe appellant was involved in criminal conduct because he witnessed no transaction. Even if the reputed drug seller did possess drugs, this, under *Reece,* would be unique to that individual. No criminal activity could

258

therefore be attributed to appellant. Accordingly, no stop and frisk was permissible.

I would vacate the judgment of sentence below and order a new trial.