**Willie Lee HUGHES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 59755.**

Court of Criminal Appeals of Texas, Panel No. Three.

March 11, 1981.

Robert Nino and Hector F. Barrientos, Houston, for appellant.

Fred M. Flecman, Asst. Dist. Atty., Richmond, Robert Huttash, State's Atty., Austin, for the State.

Before TOM G. DAVIS, McCORMICK and TEAGUE, JJ.

## OPINION

McCORMICK, Judge.

This is an appeal from a conviction of possession of more than four ounces of marihuana. Punishment is imprisonment for ten years, probated, and a fine of $5,000.

Appellant contends the evidence is insufficient to establish that she had possession and control of the marihuana. Appellant also asserts that the trial court erred in failing to include a requested charge on circumstantial evidence.

On November 19, 1976, several Houston police officers arrived at appellant's residence to execute a search warrant. The validity of the search warrant is not disputed. For safety precautions, Officer Delora Lott approached the house and fictitiously requested to use the telephone. Appellant's daughter refused to allow Officer Lott inside. When appellant came to the door, the officers identified themselves and their purpose. Appellant turned and ran from the door. The officers then forcibly entered the residence, followed appellant into a bedroom, and apprehended appellant. A pistol was found in the bathrobe appellant was wearing. Appellant and her three children were then seated in the living room. Appellant was read her rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

After securing the residence, the officers initiated their search. On a coffee table, in the den, Lott discovered numerous marihuana "bricks." The total weight of the marihuana was over fifty pounds. In the bedroom where appellant was apprehended, Officer Bengley found a paper bag containing marihuana. Also found in a jacket hanging in one of the closets were a marihuana cigarette and a pipe containing marihuana residue. Appellant's residency of the house is undisputed.

At trial, Officers Lott and Herbert Lord testified. Both officers stated that the large amount of marihuana located inside the house was clearly visible. The marihuana was approximately fifteen feet from the front door of the residence and plainly visible. Lott testified that the marihuana was similar to hay, but that it had a very strong and distinct odor.

In cases involving possession of contraband, the State must show that (a) the defendant exercised, either singularly or jointly, care, custody, control, and management over the contraband, and (b) the defendant knew that what he possessed was contraband. *Curtis v. State*, 519 S.W.2d 883 (Tex.Cr.App.1975). However, where the defendant is not in exclusive possession of the premises where the contraband is found, it cannot be concluded that she knew of or controlled the contraband unless there are additional independent facts and circumstances which affirmatively link her to the contraband. *Damron v. State*, 570 S.W.2d 933 (Tex.Cr.App.1978). This affirmative link must reasonably allow one to infer the defendant's knowledge and control of the contraband. *Norman v. State*, 588 S.W.2d 340 (Tex.Cr.App.1979). This "affirmative link" has been established when the contraband is in plain view, *Herrera v. State*, 561 S.W.2d 175 (Tex.Cr.App. 1978); the amount of marihuana found, *Carvajal v. State*, 529 S.W.2d 517 (Tex.Cr. App.1975); the accessibility of the contraband to the accused, *Hahn v. State*, 502 S.W.2d 724 (Tex.Cr.App.1973); and facts showing defendant's residence at the place where the contraband is found, *Herrera v. State*, supra.

The evidence, which this Court must view in the light most favorable to the verdict, is clearly sufficient to link appellant affirmatively to the marihuana. Officer Lott testified that a large amount of marihuana was in plain view on a coffee table in the den, and that it had a strong, distinct odor. Officer Lord substantiated Lott when, in response to whether he saw any contraband he testified:

"A. Okay, the den area from where I was standing there was a doorway that opened into, I guess what you considered a closed patio area, and there was a table and what appeared to be marijuana laying on the table and on the floor next to the table.

"Q. Was it wrapped up or loose or what?

"A. Well, it was in two or three different forms, some was in a black plastic bag on the floor and some others in a trunk, metal trunk, and some were just lying on the top of the table in clear plastic wraps.

" * * *

"Q. How far away were you from the marijuana?

"A. Maybe 15 feet at the most.

"Q. Did you see it standing from the front door?

"A. Yes."

The evidence, which this Court must view in the light most favorable to the verdict, is clearly sufficient to establish appellant's knowledge. Over fifty pounds of marihuana in a den area is hard, if not impossible, to overlook.

The dissent's reliance on the term "enclosed patio" is a misconstruction. That term was used only to indicate the area where the contraband was found. It was used descriptively to show an area that had been incorporated as an addition onto the house—a common method of enlarging the living space in homes. (Officer Lott called it a den. It contained furniture and a television set.) Moreover, there is no evidence that there was any door, much less a closed one, between the "enclosed patio" and the rest of the house.

The dissent also argues that lack of proof of residency categorically removes the "care, control, or management" element. However, appellant's residency is but a contributing factor in determining if she exercised care, custody, or management. See, *Herrera v. State,* supra; *Pierce v. State,* 577 S.W.2d 253, 255 (Tex.Cr.App.1979). Appellant's ground of error specifically attacks her *actual* control over the marihuana. Although not proven at trial, the issue of appellant's residency at the house is not only assumed at trial, but admitted on appeal. Moreover, appellant admitted her residency during the punishment stage. Regardless of the ownership or appellant's

status regarding the house, such facts have been held sufficient to sustain possession. See, e. g., *Abercrombie v. State,* 528 S.W.2d 578 (Tex.Cr.App.1975) (State's motion for rehearing) (appellant's presence and marihuana in plain view); *Hernandez v. State,* 538 S.W.2d 127 (Tex.Cr.App.1976) (appellant's presence and marihuana in plain view sufficient to revoke probation); *Zamora v. State,* 508 S.W.2d 819 (Tex.Cr.App.1974).

Even ignoring these facts, it is clear that at the time of the search, appellant was in sole possession and control of the premises. When the officers secured the house, only appellant and her three children were inside. Appellant was wearing a bathrobe. As the only adult present, the jury can reasonably conclude that appellant had control of the premises. Appellant's conduct in refusing entry or use of the phone substantiates the care, control, and management of the home. In addition, the record is devoid of any evidence that anyone else except the "Hughes" or appellant occupied or had access to the house. See, *Martinez v. State,* 539 S.W.2d 885 (Tex.Cr.App.1976); *Williams v. State,* 524 S.W.2d 705 (Tex.Cr.App. 1975). Viewing this evidence most favorably, the verdict is upheld.

■ In her only other ground of error, appellant contends that the trial court erred in refusing to include a requested charge on circumstantial evidence. However, appellant entered no written objection to the court nor is the special requested charge in the record on appeal. Having failed to comply with Articles 36.14 and 36.15, V.A.C. C.P. (1977), appellant has forfeited the right to challenge any error in the court's charge on appeal. *Johnson v. State,* 467 S.W.2d 431 (Tex.Cr.App.1971); *Polanco v. State,* 475 S.W.2d 763 (Tex.Cr.App.1971). Thus, the ground of error is overruled.

The judgment is affirmed.

TEAGUE, Judge, dissenting.

From this most difficult to read record,[1] I learn that appellant was convicted by a jury

1. For example, during the trial constant references were made to a search warrant, but the

parties below did not see fit to place the warrant in this record. Also, throughout the trial,

of the felony offense of knowingly possessing more than four ounces of marihuana. The trial court assessed punishment at 10 years' confinement in the Texas Department of Corrections but probated same.[2]

Appellant raises two grounds of error contending (1) the evidence is insufficient to sustain the conviction and (2) she was entitled to have submitted to the jury a charge on the law of circumstantial evidence.

In reviewing appellant's first contention,[*] it is necessary, of course, to review the evidence presented in the light most favorable to the verdict of the jury, see *Ahearn v. State*, 588 S.W.2d 327 (Tex.Cr.App.1979); *Jones v. State*, 582 S.W.2d 129 (Tex.Cr.App. 1979); *Owens v. State*, 576 S.W.2d 859 (Tex. Cr.App.1979); *Tatom v. State*, 555 S.W.2d 459 (Tex.Cr.App.1977); *Guzman v. State*, 521 S.W.2d 267 (Tex.Cr.App.1975); *Provost v. State*, 514 S.W.2d 269 (Tex.Cr.App.1974), and I approach this case with that rule of law in mind.

Armed with a search warrant from an unnamed magistrate in Harris County for a house of a "Mr. Hughes," or "the Hughes residence," members of the Houston Police Department went to the Briargate Subdivision in the southwest area of Houston to the street address of 6634 Roswell in Fort Bend County. In testifying, the witnesses for the State used the terms "house" and "residence" interchangeably when responding to questions. The "house" or "residence" was a "large home." "Mr. Hughes" was assumed by the witnesses for the State to be the husband of appellant. The "house" or "residence" was assumed by the witnesses for the State to be the residence of appellant, her husband and their three children,[3] but none of this was ever proved by any direct evidence.

Local assistance was requested and obtained, and a small law enforcement posse went to the residence in the early evening hours of the day in question. The absence of "Mr. Hughes" from the residence was duly noted by the police officers after their later entry into the residence, although appellant and her children did not fare too well as they were all arrested and taken to the Fort Bend County Jail. Other than this fact, the record does not reflect what happened to the three young children, although appellant was charged, as noted, with the felony offense of possessing more than four ounces of marihuana.

Officer Reynolds testified that initially she attempted to use the pretext that her auto had broken down to gain entry into the residence by knocking on the front door, which contained "smoked glass," through which she could see "shadows" or "outlines" of the interior. She knocked five times on the front door and the knock was finally answered by what appeared to her to be a

the parties made use of some type board for diagram purposes but a photograph of same is not in the record. In reference to appellant's second contention, the record reflects that a special requested written charge was submitted to the trial court judge, but the requested charge is nowhere to be found in this record even though it was designated for inclusion by appellant's counsel. The members of this Court are, of course, limited in the consideration of an appeal by the record that comes before us and we are certainly not omniscient. It would, therefore, behoove counsel for both parties, as well as the trial court, to see that a clear record is compiled in order that the members of this Court do not spend endless hours reconstructing and deciphering a record in order to rule on the contentions advanced and the response thereto. Also, in reference to three exhibits admitted into evidence, the court re-

porter who prepared the statement of facts did not even make appendix pages with notations thereon to show what these exhibits were. See Art. 40.09, Sec. 15, V.A.C.C.P.

2. A fine of $5,000 was also assessed but this was not probated by the trial judge because, "I can get to your husband that way." See infra regarding the reason for this statement.

* All emphasis is supplied throughout hereafter by the writer of this opinion unless otherwise indicated.

3. Officer Reynolds estimated their ages at six to thirteen years. However, at the time of the trial, which was fifteen months after the date of the offense, appellant testified at the punishment hearing the children were ten, fifteen and seventeen years of age.

small child's voice, who asked, "Who is it?" with Officer Reynolds telling the person her fictitious tale of woe. The door was not opened however. The small child appeared to leave the area, and what seemed to be an adult person's "outline" then appeared with Reynolds hearing the small child asking the "outline" if Reynolds could use the telephone. An "adult" voice asked, "Who is it?" There was also testimony the small child told Reynolds that her mother told her to tell Reynolds she could not use the telephone, whereupon Reynolds told the small child she would pay for the telephone call she wished to make. Reynolds apparently asked the small child where her mother was, then saw through the glass what appeared to be the "outline" of an adult size female person and inquired: "Mrs. Hughes?" At that time, Reynolds identified herself and the others as being Houston Police Officers or said "Police," whereupon Reynolds saw the larger "outline" commence running toward the back of the house. Forcible entry was then made through the front door, with appellant being arrested in a bedroom of the residence. The exact location of appellant's children, including the small child who answered the knock on the door, after entry was made, is not shown. A search of appellant divulged a loaded .38 weapon that was found in a pocket of the bathrobe she was wearing.[4] No evidence was adduced as to whether the children were searched and, if so, what, if anything, was found.

The record is not at all clear as to where all the marihuana introduced into evidence was found but, from the testimony adduced, I have reconstructed the following which appears to be a fair representation of the facts of the case.

Officer Reynolds[5] testified that after gaining entry, "In plain view where I was standing, I could see a large amount of marihuana straight through the hallway in the den area." Objection to the use of the word "marihuana" was sustained. However, she also testified,

Q. Is that what you saw at the end of the hall?

A. It wasn't a hall as you come in the front door, there was a living area and then we—they had another room and the wall came in like this, but it was a wide entrance way and just right there, I mean straight from the front door you could see the coffee table with the bricks on it, so it wasn't—I would say at the end of the hall just into another room, it was visible from the living room.

Without the testimony of Officer Lord, see infra, the above answer standing alone would not be very understandable.

Reynolds also testified she found in one of the closets (the record does not show if there was one or one hundred closets in the residence) a black leather jacket (the record does not show if this had the appearance of being a male or female's jacket, or what else, if anything, was in the closet), one marihuana cigarette, and a pipe containing some marihuana residue. She also testified that she saw an Officer Bengley, who did not testify, find a brown paper bag containing marihuana (what quantity is not shown) in the bedroom to which the "shadow" or "outline" fled. A "large" amount of cash was also found in that bedroom (the exact sum in dollars and cents is not shown). Reynolds also testified the police found a blue trunk "that was lying on the floor," which had a residue of marihuana in it as well as a green leafy plant substance in the bottom of the trunk. The only reference to a suitcase is found in the following testimo-

4. Appellant's possession of a weapon has no probative value whatsoever to the charge due to the fear many homeowners and tenants have when answering an unexpected knock on a residence door after dark. Appellant was apparently docile and obedient when placed under arrest as there is no evidence shown to the contrary. Although appellant was searched, the type of apparel, if any, under the bathrobe she was wearing is not shown.

5. At the time of the offense, Officer Reynolds was assigned to the Narcotics Division of the Houston Police Department. At the time of trial she had been "transferred out" to the dispatcher's office from the Accident Division of the police department.

ny of Officer Reynolds: "... so we re-packed the suit case with these bricks and found another container to carry the other contraband in ...." (Whether the "blue trunk" and "the suitcase" are one and the same will never be known from this record.)

Although Officer Reynolds was questioned as to the three exhibits admitted into evidence, see Officer McDonald's testimony infra, at no time did she specifically testify where they were located or found inside the residence. She was not, of course, asked by the prosecutor these most important questions.

Officer Herbert Lord of the Fort Bend County Sheriff's Department,[6] who participated in the execution of the search warrant as one of the "local" officers, testified that after entry was gained into the residence, appellant and her three children were brought into the den area of the residence. Regarding where the marihuana was found, Lord testified in part as follows:

Q. Now, in the den [where he was stationed while the other officers executed the search warrant] did you see anything that was contraband?

A. Okay, the den area from where I was standing there was a doorway that opened into, *I guess what you considered a closed patio area*, and there was a table and what appeared to be marijuana laying on the table and on the floor next to the table.

Q. Was it wrapped up or loose or what?

A. Well, it was in two or three different forms, some was in a black plastic bag on the floor and some others in a trunk, metal trunk, and some were just lying on the top of the table in clear plastic wraps.

Lord testified that he could see the marihuana from "anywhere in the den area." He was, "from where he was standing," that is, "stationed at the front door to secure the front door," "maybe 15 feet at the most," from the area where the marihuana was. Lord testified the marihuana found at the residence was placed in a trunk. He also testified,

Q. All right, well, then, when you came into the house where did you see marihuana?

A. *In an enclosed patio off the den.*[7]

Q. Okay, is that where these bricks were?

A. Yes, sir.

\*    \*    \*    \*    \*    \*

Q. Okay, did you see any other marijuana anywhere in that house?

A. No sir.

Q. That's the only marijuana that you saw?

A. Yes, sir.

Floyd E. McDonald, a well-known police officer, chemist, and toxicologist with the Houston Police Department, testified in reference to the following three State's exhibits: Exhibit Number 1, an envelope; Exhibit Number 2, a package; and Exhibit Number 3, "part of the much larger consignment;" and Exhibit Number 4, a photograph of all the items received by him from Officer Reynolds on the night in question. (None of these exhibits were included in the record, and there is no appendix page, which refers to these exhibits, in the record.) The photograph was refused admission into evidence by the trial judge. McDonald testified that "the total weight was a little over 23 kilograms, which translated to about 50 pounds." Officer McDonald also testified,

---

6. Lord, at the time of the trial, was employed by the Sugarland Police Department, having previously been with the Fort Bend County Sheriff's Department, with former employment with the Missouri City Police Department. He apparently commenced his law enforcement career *after* he was an "Inhalation Therapist." Although he was the first officer through the front door, other than knowing he did not break the door, he did not have any idea which officer "broke the door down."

7. A search of the statement of facts does not reveal if there was a door and, if so, whether the door to the *patio* was locked and, if so, where the key was or who had the key to same at the time of the execution of the search warrant. No issue is made of the validity of the search warrant *affidavit* or search warrant by appellant in this appeal.

Q. Mr. McDonald, what was the physical description of the items brought to you?

A. Well, there were, first of all, in the group that I labeled as Group A, which was that big blue steamer trunk there with 19 bricks similar to the one here on the table, there was a green garbage bag that was full of marijuana, loose marijuana. There was another brick of that type that didn't have any wrapping on it. It had been compressed, but hadn't been wrapped in paper so I counted it separately. There was a brown paper sack that had about, oh, about a pound of plant material of marijuana in it. There was a small brown paper sack that had about a half of a pound of marijuana in it, and then *that was all in that Group A in the blue trunk*, then, there was an envelope that I marked B, which is this envelope State's Exhibit 1, that had a pipe that had some marijuana reside (sic) in it. It also had a little piece of aluminum foil with some plant substance wrapped in the foil. That was not marijuana, and then the other envelope, the other one marked C, has four plastic baggies of plant substance that were marijuana and they totally contained 57 grams, which is about two ounces of marijuana.

The above appears to be all of the salient testimony and evidence regarding the first issue raised by appellant. Appellant's counsel, *in his well-written brief on the law*, makes the following statement: "Fifty pounds of marijuana were found on a table *in an enclosed patio* and a pipe containing marijuana residue was found in a leather jacket in one of the closets in the bedroom." The Assistant District Attorney, in his brief, states: "Marihuana was located in open view *in the area of the living room*; it

had been processed into bricks and was placed on top of a coffee table (SF 27, 28, 73, 74)." "Approximately fifty pounds of marihuana was found (SF 12)."

With the above background, together with the statements of both counsel for the appellant and the State as found in their briefs, the issue on appeal limits itself to the liability of the appellant for the offense of possessing the marihuana found *in the enclosed patio of a residence* in which she was found when police executed a search warrant.

The record of the punishment hearing in this cause reflects that appellant is 42 years old, never having been convicted of a felony or a misdemeanor offense in her lifetime, has been an elementary school teacher in various school districts of this state for approximately 18 years, has been married for 17 years, and that the "Mr. Hughes" named in the search warrant is the father of her three young children. Interestingly, the trial court in his summation, prior to assessing punishment, remarked: " . . . the District Attorney's office in this county [is] not angry with you," and admonished appellant, after granting her probation, that, as to her husband, "if your husband refuse[s] not to mess with drugs, now, he is either going to change or you're going to get out of there and you're going to go to the penitentiary, it is just that simple."[8]

This record is totally and absolutely silent of any wrongful or unlawful activities of appellant outside the residence in question prior to the arrival of the police at the residence on the night in question. No evidence whatsoever was admitted at the guilt stage to show any relationship she may have had with "Mr. Hughes," the person named in the search warrant. There is no evidence to show how long appellant had been at the residence prior to the time the police arrived on the evening in question.[9]

8. In deciding the issue of sufficiency, I did not consider this evidence or these statements of the trial court judge but felt by putting them in the opinion they would assist the reader in more clearly understanding this cause and the statements of the trial court, see footnote 2, *supra.*

9. From what appears, or fails to appear, in the record, appellant could have been merely a babysitter with the misfortune of having the same last name as the "Mr. Hughes" named in the search warrant.

There is no evidence appellant was under the influence of any type drugs, narcotics or marihuana when the search warrant was executed. There is no proof that appellant was ever inside the "*enclosed patio*" where the marihuana, for which appellant was tried, was found and, even though testimony showed that one could see the marihuana as it then existed in the "*enclosed patio*" area of the residence, from the den or living room area of the residence, there is no evidence or testimony that this appellant was aware of its existence or could have seen it. Appellant also made no oral res gestae incriminatory statements when arrested or at any time during the evening in question.

We thus have nothing of an affirmative or of a direct nature to link appellant to the marihuana found in the "*enclosed patio*," for which marihuana she was charged, tried and convicted.

An accused, of course, may jointly possess marihuana with another and exclusive possession need not be shown. However, mere presence alone at a place where the contraband or marihuana is located or found, or is being used or possessed by others does not justify a finding of joint possession. Two elements must be proved: (1) that the accused exercised care, control, and management over the contraband, and (2) that the accused knew the matter possessed was contraband. In other words, where the State seeks to convict an accused on the basis of joint possession, the State must show "additional independent facts and circumstances which affirmatively link the accused to the contraband in such a manner that it can be concluded he or she had knowledge of the contraband as well as control over it." See *Heltcel v. State*, 583 S.W.2d 791 (Tex.Cr.App.1979). In reversing that conviction, where the facts showed the accused, while driving an automobile, was stopped by the police and marihuana was subsequently found where a backseat passenger had been lying, it was further pointed out:

There was no proof that appellant had knowledge of the presence of contraband. The marihuana found was in the back seat inside a paper bag which had been secreted under McCain. There was no evidence of a noticeable odor within the car and no other contraband was found either in the car or on appellant's person.

The State's sole authority in its brief, to sustain the conviction, is *Martinez v. State*, 539 S.W.2d 885 (Tex.Cr.App.1976), which, though close, is not really in point. *Martinez* involved the trial, conviction, and appeal of a husband and wife for the felony offense of possession of marihuana. The police gained entrance into their residence by way of a search warrant after being permitted inside by a small child. A search of the residence showed the appellants, husband and wife, apparently asleep in bed in their bedroom. The wife, Diana, challenged the sufficiency of the evidence on appeal. The opinion teaches us the following about the facts of the case:

> In plain view on a table next to the side of the bed occupied by Diana Martinez [the appellant] they found a glass jar containing a small amount of marihuana. In the kitchen next to the bedroom, the officers found a bag containing nine "bricks" of marihuana, the total weight of which was approximately nine pounds. A metal box containing marihuana, hashish, cigarette papers, a *cigarette roller* and a knife was on the kitchen table. (886).

A utility bill in the name of her husband, Hector, was also found in the house. There was no evidence that anyone other than the defendants lived in the house and the only other persons present were two young children. This Court rejected the defendant Diana's contention that the evidence was insufficient and rightly so as a kitchen next to a main bedroom is and would certainly be a common area for either a husband or wife to go into and it would be absolutely absurd to argue this is an area usually

restricted or is not common to both of the spouses.[10]

There is no evidence the marihuana falls within "plain view" whereby it could be construed, as it apparently was in *Martinez*, to be a circumstance to show a "link" to the accused. See also *Villegas v. State*, 509 S.W.2d 314 (marihuana found laying on a table in the living room), and *Williams v. State*, 524 S.W.2d 705 (Tex.Cr.App.1975), (marihuana seeds found in the middle of a table in the living room; marihuana plants, growing in the back yard, had been hoed and cultivated "pretty good").

Mere presence, again, is insufficient to establish joint possession unless the facts and circumstances presented by direct or circumstantial evidence show that a reasonable inference arises that the accused knew of the existence of the contraband and its whereabouts when the contraband was found *and* they further show the accused exercised control over the contraband. See and compare *Harrison v. State*, 555 S.W.2d 736 (Tex.Cr.App.1977) where the evidence was ruled insufficient to show the defendant wife was in possession of heroin found in her home and residence she shared with her husband, even though she was present in the residence when the police executed a search warrant and the doors and windows of the house were covered and secured by steel bars. To gain entrance, it was necessary for the police to use a 16-pound sledge hammer. Also there, the police heard, prior to gaining entrance, *two* people running in the house. They saw the defendant husband disposing of heroin in a sink and 13 packets of heroin were found near the kitchen sink. After all this excitement and these events, the defendant wife was, when the police entered the living room area of the house, "holding two dogs and talking to them." No other person was shown to be present besides appellant and her husband. The facts there are far stronger than here and we reversed there.

To recapitulate, the evidence to connect appellant to the marihuana found in the "*enclosed patio*," prior to the entry of the police into the residence, showed only that Officer Reynolds saw from the outside a "shadow" of what appeared to be an adult female near the front door when what appeared to be a small child was then speaking to Reynolds. Appellant is tenuously tied to the residence at best. As previously noted, neither the affidavit for the search warrant nor the search warrant are before us as neither was put into the record of this cause for appeal purposes at the trial.

In reference to the inside or the interior of the residence, bricks of marihuana were found inside an "*enclosed patio*," which was visible from the front door and the den or living room area of the residence. A bag containing an undisclosed amount of marihuana was found in the bedroom, the exact location therein is not shown. A pipe with residue was found inside a closet but its exact location is not shown. Appellant, when arrested, had in a pocket of her bathrobe a loaded .38 caliber pistol. A large sum of money was found in the bedroom; however, an objection to this answer was sustained by the trial court. Appellant was found and arrested in a bedroom. Three juveniles were also found inside the house. The exact location of these children inside the house after entry was made was never shown.

As to actions of appellant, upon announcement of "Houston Police Officers" or "Police," the "shadow," which was later shown to be appellant, fled to a back bedroom.

As to appellant's relationship to the residence or house, she was merely shown to be present when the search warrant was executed and was subsequently arrested wearing a bathrobe. During the trial at the guilt-innocence stage, the three female juveniles coincided with but were never identified as the three daughters of the appellant. According to Officer Reynolds, one of

---

**10.** Due to the lack of evidence here, or the failure to adduce evidence, we cannot say the

same thing for the "enclosed patio."

the children did say: "I'm going to ask my mother," although Officer Lord denied such statement was made. The "shadow" figure asserted a form of control of the premises by saying, "Go away," or having it said by a small child. Appellant has the same last name as the man named in the warrant; all of which testimony was adduced by rank hearsay.

From all of the above and after a most careful review of this record, I conclude the evidence is insufficient to sustain the conviction of appellant. Not too long ago, this Court, in *Shortnacy v. State*, 474 S.W.2d 713 (Tex.Cr.App.1972), see also *Carr v. State*, 480 S.W.2d 678 (Tex.Cr.App.1972), in discussing mere presence in a possession case, speaking through Presiding Judge Onion, said:

The mere presence of the accused at the scene of a crime does not of itself justify drawing an inference that he participated therein. *Reid v. State*, 474 S.W.2d 702 (Tex.Cr.App.1972); *Glenn v. United States*, 271 F.2d 880 (6th Cir., 1959). Mere presence or even knowledge of an offense does not make one a principal. [*or a party now*] *Ware v. State*, Tex.Cr.App., 467 S.W.2d 256.

Only recently in *Brown v. State*, 481 P.2d 475, the Oklahoma Court of Criminal Appeals wrote:

Possession means more than being where the action is; it involves the exercise of dominion and control over the thing allegedly possessed. *United States v. Romano*, 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210; *Fitzpatrick v. United States*, 410 F.2d 513 (5th Cir., 1969). *Mere proximity is insufficient.* By its very nature, possession is unique to the possessor and it is not enough to place him in the presence of other persons having possession to impart possession to him. *Commonwealth v. Reece*, 437 Pa. 422, 263 A.2d 463, 466 (1970).

It is true that exclusive possession is not necessary where the parties jointly possess a drug and possession may be proved by circumstantial evidence.

*Patterson v. State*, Okla.Cr.App., 403 P.2d 515 (1965). However, it cannot be inferred from merely being present in a place where marijuana is found that the defendant had knowledge of its presence and had dominion and control. There must be additional evidence of knowledge and control to sustain a conviction.

In *State v. Carr*, 8 Ariz.App. 300, 445 P.2d 857, the Arizona Court wrote:

The crime of possession of narcotics requires a physical or constructive possession with actual knowledge of the presence of the narcotic substance. *Carroll v. State*, 90 Ariz. 411, 368 P.2d 649 (1962). Although possession may be shown by direct or circumstantial evidence, the evidence must link the defendant to the narcotics in such a manner and to such an extent that a reasonable inference may arise that the defendant knew of the narcotics' existence and of its whereabouts. *Carroll v. State*, supra. See also *State v. Oare*, 249 Or. 597, 439 P.2d 885.

I believe the principles of law announced in *Shortnacy*, supra, control the disposition of this case, see also *Pierce v. State*, 577 S.W.2d 253 (Tex.Cr.App.1979); *Herrera v. State*, 561 S.W.2d 175 (Tex.Cr.App.1978); *Ochs v. State*, 543 S.W.2d 355 (Tex.Cr.App. 1976), *cert. denied*, 429 U.S. 1062, 97 S.Ct. 786, 50 L.Ed.2d 778 (1977), and though my suspicion as to the guilt of appellant is aroused, as Judge Odom said in *Suff v. State*, 531 S.W.2d 814 (Tex.Cr.App.1976): "We cannot bring ourselves, in spite of the gravity of the offense and the revulsion with which it fills, to uphold a verdict supported only by innuendo bolstered by moral outrage."

Therefore, viewing the evidence in the light most favorable to the verdict, I am constrained to conclude that under the facts of this case as presented, and the law of this State, they do not sufficiently establish a nexus that affirmatively links appellant to the contraband seized "*in the enclosed patio off the den*" of the residence involved. I further conclude the evidence was not

sufficient to show appellant ever committed some act with intent to promote or assist the commission of the offense, by encouraging, directing, aiding or attempting to aid "Mr. Hughes" to commit an offense. In accord with the decisions of the Supreme Court of the United States in *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1, (1978), and *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978), I would enter a judgment reversing and ordering the prosecution dismissed.

I, therefore, respectfully dissent.