Jean Marion Ogrodowicz CHAVEZ, Michael Durwood Neal, Joseph Louis Lyons, Robert Thomas Neal, III, Appellants,

v.

The STATE of Texas, Appellee.

Nos. 01–87–01040–CR to 01–87–01042–CR.

Court of Appeals of Texas, Houston (1st Dist.).

March 9, 1989.

Bob Tarrant, Houston, for appellants.

Jim Mapel, James L. Turner, Angleton, for appellee.

Before O'CONNOR, DUGGAN and COHEN, JJ.

O'CONNOR, Justice.

The jury convicted four appellants, tried together for the possession of a controlled substance, and assessed their punishment. Joseph Lyons received confinement for life and a fine of $10,000 (one prior conviction); Jean Chavez received 17 years confinement and a fine of $10,000; Michael Neal received 20 years confinement and a fine of $10,000; and Robert Neal received imprisonment for life and a fine of $10,000 (two prior convictions).

In point of error one, appellants argue the trial court should have granted their motions to suppress evidence because the police obtained the evidence during an illegal search. That evidence included a cup containing methamphetamine, a syringe holding methamphetamine, a spoon having traces of the controlled substance, and the equipment used to manufacture methamphetamine. Appellants contend the police searched without their consent and without probable cause. They also challenge the affidavits supporting the search warrant because: they do not establish probable cause; they contain intentional and reckless falsehoods; they lack reliable information given by a credible person; and they include facts obtained in an unlawful entry and search. Appellants claim the search violated their rights under the fourth and fourteenth amendments of the United States Constitution, under article I, section 9 of the Texas Constitution, and under Tex. Code Crim.P.Ann. art. 18.01 (Vernon Supp. 1989).

Kirk Brannan, the owner of Brannan Realty, rented a Surfside beach house (the Maui house) to Katherine Kelly on September 11, 1985, for two days. Kelly paid Brannan part of the rent. The next day she paid the remainder in cash and rent for one additional day. Brannan testified that Kelly, as well as one of the bills she handed him, smelled like methamphetamine. Brannan recognized the smell because two of his other rent houses had been damaged when they were used for methamphetamine labs. After receiving Kelly's payment, Brannan went to the Maui house and, from 50 feet away, he smelled the same odor.

Brannan returned to the property with Police Captain John Campos. They walked

under the house and smelled the odor coming from the garage. Campos identified the smell as phenylacetone, P2P, a precursor of methamphetamine. They did not see anyone at that time. Campos suspected that appellants had set up a methamphetamine laboratory in the garage of the Maui house. Campos returned to the marshal's office and contacted a district attorney to draw up a search warrant.

Around 2:30 p.m., after getting a search warrant, Campos set up surveillance across the street from the Maui house. Officer Luxton joined him there that evening. They executed the warrant at about 8:30 p.m. As they opened the door, using a key provided by Brannan, they announced that they were police officers. Three women were inside the house; three men were on the balcony. The men exchanged gunfire with the officers. The officers arrested the women, but the men jumped off the balcony and ran. The officers caught and arrested them later.

■ Appellants' first argument is that the justice of peace did not have the authority to issue the search warrant. Article 18.01(c) omits justices of the peace when it limits the authority to issue evidentiary warrants for items listed under Tex. Code Crim.P.Ann. art. 18.02(10) (Vernon Supp.1989) to: judges of municipal courts of record who are licensed attorneys; judges of the statutory county courts; judges of the district courts; judges of the Court of Criminal Appeals; and judges of the Texas Supreme Court. Article 18.01(a), however, permits any magistrate, including justices of the peace, to issue all other search warrants listed in article 18.02.

The search and arrest warrant here issued was for the seizure of methamphetamine. Article 18.02, sections (2), (7), and (9) authorize a search warrant to seize: "property specially designed, made or adapted for or commonly used in the commission of an offense; ... drugs kept, prepared, or manufactured in violation of the laws of this state; ... implements or instruments used in the commission of a crime, ..." Warrants described in article 18.02(2), (7), and (9) are not subject to the requirements of article 18.01(c). *Martin v. State,* 727 S.W.2d 820, 821 (Tex.App.—Fort Worth 1987, no pet.) The justice of the peace had authority to issue this warrant.

Appellants argue that the facts alleged in the affidavits by Campos and Brannan resulted from an illegal entry and search. The State did not challenge appellants' standing to contest the search.

■ A person's protection against unreasonable search and seizure extends to the private property immediately adjacent to the property. *United States v. Anderson,* 552 F.2d 1296, 1300 (8th Cir.1977). In walking onto the property and under the beach house, where he smelled the odor of methamphetamines, Officer Campos intruded into the curtilage of the house. *Kann v. State,* 694 S.W.2d 156, 159–60 (Tex.App. —Dallas 1985, pet. ref'd.)

The State can justify the warrantless intrusion onto the property if: (1) Campos had probable cause; and (2) the circumstances were critical, requiring immediate intrusion. *Vale v. Louisiana,* 399 U.S. 30, 35, 90 S.Ct. 1969, 1972, 26 L.Ed.2d 409 (1970). It is the State's burden to show the existence of an exceptional situation. *Chimel v. California,* 395 U.S. 752, 762, 89 S.Ct. 2034, 2039, 23 L.Ed.2d 685 (1969). Some exceptional circumstances that authorize a warrantless search are: consent, response to an emergency, hot pursuit of a fleeing felon, contraband in the process of being destroyed, and contraband about to be removed from the jurisdiction. *Vale v. Louisiana,* 399 U.S. at 35, 90 S.Ct. at 1972.

When he walked onto the property, Campos knew that Brannan had smelled the P2P odor on Kelly and the rent money. Brannan had also smelled the odor while standing near the house on the street. These facts did not prove any exceptional circumstances to justify Campos' warrantless intrusion. *See Kann,* 694 S.W.2d at 160.

■ Where some unlawful action taints the underlying affidavit, the search warrant is valid "if it clearly could have been issued on the basis of the untainted information in the affidavit." *Brown v. State,*

605 S.W.2d 572, 577 (Tex.Crim.App.1980; 4 W. LaFave, *Search & Seizure*, sec. 11.4(f) at 417 (1987). The trial court excised the portion of Campos' affidavit referring to his walk under the house and found the information in Brannan's affidavit provided sufficient probable cause.

The Court of Criminal Appeals said:

Probable cause to support the issuance of a search warrant exists where the facts submitted to the magistrate are sufficient to justify a conclusion that the object of the search is probably on the premises to be searched at the time the warrant is issued. Where facts and circumstances within the knowledge of a police officer, arising from a reasonably trustworthy source, would warrant a [person] of reasonable caution in the belief that items of contraband or evidence of a crime may presently be found in a specified place, there is probable cause to issue a warrant to search that place. A search warrant affidavit must be read in a commonsense [sic] and realistic manner, and reasonable inferences may be drawn from the facts and circumstances contained within its four corners.

*Cassias v. State*, 719 S.W.2d 585, 587–88 (Tex.Crim.App.1986). Citizen informants and police officers are presumptively reliable sources of information. *Marquez v. State*, 725 S.W.2d 217, 233 (Tex.Crim.App. 1987). Appellants presented no evidence putting the credibility of Brannan into issue.

Campos' affidavit alleged that Kelly possessed methamphetamine at the beach house. In support of that allegation, Campos swore.[1]

that he is a Peace Officer employed as a Patrolman with the Surfside Village Marshall's Department and has reason to believe based upon the sworn statement of Kirk Brannan that (see attached copy of statement incorporated herein by reference),

*Further that affiant did personally go to 106 Nesmith Dr. [the beach house], Surfside Village, Brazoria County, Texas and while in the presence of Kirk*

*Brannan did walk directly underneath the beach house (with Kirk Brannan's permission) and did smell a distinctive odor that Officer Campos through his past experience as a Peace Officer knows to be associated with the manufacture of methamphetamine,*

Further that affiant believes Kirk Brannan to be a competent and credible person due to his absence of a criminal record and his good standing in the community.

Kirk Brannan's statement, which was incorporated in Campos' affidavit, declared:

I am president and owner of the Brannan Realty Company located at 246 Bluewater, Surfside Beach, Tex. On September 11, 1985 (Wednesday) at approximately 10:00 AM, a Katherine Kelly, 3510 Cobbleskill, Missouri City, Tx. came into my office for the keys to the "Maui" beach house located at 106 Nesmith Drive, Surfside Beach, Tx. Ms. Kelly had this house reserved for the 10th of Sept., 1985. Ms. Kelly showed up 9–11–85 at approx. 10:00 AM. Ms. Kelly gave me $160 and owed me $23.60, and advised that she was going to pay me the rest on 9–12–85. On 9–12–85 Ms. Kelly showed up at my office at approx. 12:45 PM. She paid me $23.60 plus one more days rent plus tax. After this transaction, Ms. Kelly left. When Ms. Kelly was paying I smelled a distinctive odor that resembled the same odor that I remember from the previous incident which occured [sic] on 12–29–83 at 319 Beach Dr. The people who rented that house had set up a methamphetamine laboratory. I had gone into that house and saw several vials, and the smell was very distinctive. The same smell at that house was on the money, especially on a $10 bill, serial # F42696969A. I then went to the "Maui" beach house and smelled the same odor very heavily. I then notified the Surfside Beach Marshal's Office.

 The odor of an illegal substance can provide an element of probable cause for a search. *Hattersley v. State*, 487 S.W.2d

---

**1.** The italicized paragraph is the one excised by the trial court.

354, 356 (Tex.Crim.App.1972). Brannan's statement that he had previously smelled a methamphetamine lab and recognized the same odor on Kelly, on the money, and outside the house, would lead a reasonably cautious person to believe there was a methamphetamine lab at the beach house. We find the affidavits asserted enough facts to establish probable cause.

Appellants point to inconsistencies between Campos' affidavit and his testimony at the examining trial as evidence of intentional and reckless falsehoods. If we find that an affidavit includes falsehoods made knowingly or with reckless disregard for the truth, we excise those portions and determine whether the remainder is sufficient. *Spencer v. State*, 672 S.W.2d 451, 454 (Tex.Crim.App.1984). At the examining trial, Campos testified he stayed on the road the first time he approached the beach house. In the affidavit, Campos said he went under the house and up to the garage. Any inconsistencies between his testimony and his affidavit are in the section excised by the trial court which we italicized above.

We overrule appellants' first point of error.

■ Each appellant moved for an instructed verdict of acquittal at the close of the State's case. Each argued the evidence did not show they each knew the substance was methamphetamine or that any of them exercised care, control, and custody of the substance. In their second point of error, appellants argue the trial court should have granted their motions.

In an unlawful possession case, the State must prove: (1) each appellant exercised care, control, and management over the

contraband; and (2) each knew the substance was contraband. *Nunn v. State*, 640 S.W.2d 304, 305 (Tex.Crim.App.1982). Mere presence at a place where drugs are being used or possessed by others does not justify a finding of joint possession, or prove one a party to an offense. *Martin v. State*, 753 S.W.2d 384, 387 (Tex.Crim.App. 1988). A defendant's rental of property where narcotics are found, if the property is also used by others, is not enough to support a finding of joint possession. *See Guiton v. State*, 742 S.W.2d 5, 8 (Tex.Crim. App.1987).

When the theory of prosecution is that the accused and another person jointly possessed a narcotic drug, the evidence must affirmatively link the accused to the contraband. *Martin v. State*, 753 S.W.2d 384, 387 (Tex.Crim.App.1988). The trier of fact must be able to conclude the accused had knowledge of the contraband and control over it. *Id.*

Circumstances the Texas Court of Criminal Appeals instructs us to consider when determining whether the State has met its burden include:

1) Defendant's presence when the search warrant executed; [2]
2) Contraband in plain view; [3]
3) Defendant's proximity to and the accessibility of the narcotic; [4]
4) Defendant under the influence of narcotics when arrested.[5]
5) Defendant's possession of other contraband when arrested; [6]
6) Defendant's incriminating statements when arrested; [7]
7) Defendant's attempted flight; [8]
8) Defendant's furtive gestures; [9]

---

**2.** *Martin*, 753 S.W.2d at 387 (citing *Damron v. State*, 570 S.W.2d 933, 936 (Tex.Crim.App. 1978)); *Dickey v. State*, 693 S.W.2d 386, 389 (Tex.Crim.App.1984).

**3.** *Guiton*, 742 S.W.2d at 8; *Dickey*, 693 S.W.2d at 389.

**4.** *Martin*, 753 S.W.2d at 387; *Guiton*, 742 S.W.2d at 9; *Moulden v. State*, 576 S.W.2d 817, 820 (Tex.Crim.App.1978); *Hahn v. State*, 502 S.W.2d 724, 725 (Tex.Crim.App.1973).

**5.** *Martin*, 753 S.W.2d at 387; *Guiton*, 742 S.W.2d at 9 (Tex.Crim.App.1987).

**6.** *Martin*, 753 S.W.2d at 387; *Guiton*, 742 S.W.2d at 9.

**7.** *Martin*, 753 S.W.2d at 387; *Guiton*, 742 S.W.2d at 9.

**8.** *Guiton*, 742 S.W.2d at 9.

**9.** *Guiton*, 742 S.W.2d at 9.

9) Presence of odor of the contraband; [10]

10) Presence of other contraband or drug paraphernalia, not included in the charge; [11]

11) Defendant's ownership or right to possession of the place where the controlled substance was found; [12]

12) Place drugs found was enclosed.[13]

The State is not required to prove a set formula of facts to show possession. *See e.g. Humason v. State,* 728 S.W.2d 363, 366–67 (Tex.Crim.App.1987); *Dickey v. State,* 693 S.W.2d 386, 389 (Tex.Crim.App. 1984).

Campos smelled phenylacetone coming from the garage of the beach house. After getting a warrant, he set up surveillance at a house 25 yards away. From there, Campos saw the four appellants, Bryant, and Kelly at the Maui house for at least two hours before executing the warrant. Campos watched each of the three men go in and out of the garage during the day. The women went back and forth from the house to the beach.

Campos and Luxton executed the warrant around 8:30 p.m. As they entered, Campos yelled that they were police officers. Kelly and Bryant were near the door and were the closest to the controlled substance found on the counter-top. Chavez ran across the room and into one of the bedrooms. Both Campos and Luxton testified they saw a muzzle flash and heard a gunshot coming from the balcony. Campos stated he saw "figures" out on the balcony but because of the darkness could not say they were the male appellants. He heard them jump off the balcony. They arrested the women at that time. Campos testified the three women were under the influence of a controlled substance.

After the three men jumped off the balcony, Campos called the Texas Department of Corrections for assistance in finding them. TDC provided bloodhounds that, within a couple of hours, tracked Michael Neal to a nearby bar. When arrested, Michael Neal gave an alias. Campos spotted and arrested Robert Neal near a motel in the area of the beach house around daybreak the next day. Campos found Joseph Lyons in response to a call by residents complaining about a trespasser in the area. When Campos investigated, he saw Lyons dive into a canal. Lyons also gave an alias when arrested. Campos and Luxton testified that both Robert Neal and Lyons smelled of phenylacetone when arrested.

The beach house and the garage smelled of phenylacetone. The officers found two syringes, a bowl, a cup, and spoons on the bar that divided the kitchen from the living room. Analysis revealed methamphetamine in the cup and one syringe with traces on two spoons. Each time appellants entered the house, they each passed within reaching distance of the syringes, the bowl, the cup, and spoons on the counter-top. During his surveillance, Campos saw no one in the beach house other than appellants, Bryant, and Kelly. The officers discovered a methamphetamine lab in the garage.

In reviewing the sufficiency of the evidence, we evaluate it in the light most favorable to the verdict. *Flournoy v. State,* 668 S.W.2d 380, 383 (Tex.Crim.App. 1984). We judge the sufficiency of the evidence to support a conviction by the standard established in *Jackson v. Virginia,* 443 U.S. 307, 320, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979):

> The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Anderson v. State,* 701 S.W.2d 868, 872 (Tex.Crim.App.1985). The standard is applied to both direct and circumstantial cases. *Carlsen v. State,* 654 S.W.2d 444,

---

10. *Guiton,* 742 S.W.2d at 9.

11. *Hughes v. State,* 612 S.W.2d 581, 582–83 (Tex. Crim.App.1981); *Mendoza v. State,* 583 S.W.2d 396, 397 (Tex.Crim.App.1979); *Moulden,* 576 S.W.2d at 820.

12. *Guiton,* 742 S.W.2d at 8; *Dickey,* 693 S.W.2d at 389; *Hughes,* 612 S.W.2d at 582.

13. *Guiton,* 742 S.W.2d at 8.

449 (Tex.Crim.App.1983). If the evidence supports an inference other than the guilt of the appellant, a finding of guilt beyond a reasonable doubt is not a rational finding. *Anderson v. State,* 701 S.W.2d at 872.

The evidence the State introduced against all appellants was: appellants had equal rights to possession of the rented house and garage; the methamphetamine was in a common part of the house and in plain view; appellants were present at the time of the search; appellants attempted to flee; there was a methamphetamine laboratory in the garage; the methamphetamine was found in an enclosed house; the unmistakable odor of P2P, the precursor of methamphetamine, permeated the house and garage.

There was additional evidence against the appellants individually: the officers saw all three male appellants going in and out of the garage; the officers tracked Michael Neal, using bloodhounds, and arrested him within a couple of hours of the search; Lyons and Robert Neal, arrested separately, both smelled of P2P and each gave an alias when arrested; one of the men on the balcony fired at the officers when they executed the search warrant; Lyons jumped into the canal and tried to hide underwater when he saw the officer; and Chavez was in the same room as the drug when the officers entered the house, and she was under the influence of narcotics when arrested.

We find the evidence sufficient to establish a positive link between appellants and the methamphetamine found in the beach house. The trial court properly denied appellants' motions for instructed verdict.

We overrule appellants' second point of error.

The State asserts a cross-point of error under the authority of Tex.Code Crim.P. Ann. art. 44.01(c) (Vernon Supp.1989). The State argues the trial court should not have excluded the prior convictions of Joseph Lyons and Robert Neal for possession of methamphetamines offered during its case in chief. Because of our disposition of the first two points of error, we need not address the State's cross-point.

We affirm the trial court's judgment.