NO. 07-03-0071-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

MARCH 8, 2005

_____

RANDY L. JONES, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 364TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2001-437483; HONORABLE BRADLEY UNDERWOOD, JUDGE
_____

Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

**MEMORANDUM OPINION**

Appellant Randy L. Jones was convicted, pursuant to a plea bargain, of possession with the intent to deliver a controlled substance (methamphetamine) in the amount of 4 to 200 grams.  He was sentenced to eight years confinement in the Texas Department of Criminal Justice–Institutional Division, probated for eight years, under terms and conditions of community supervision.  He contends on appeal that the trial court erred in failing to grant his motion to reconsider its ruling on his motion to suppress.[1]  He argues there was

---

[1]The trial court certified Jones's right to appeal the ruling on his pretrial motion to suppress.  See Tex. R. App. P. 25.2(a)(2).

not valid consent to search a feed bin being used by appellant, that his vehicle was searched illegally, and that an oral statement made to a law enforcement officer is inadmissible under article 38.22 of the Texas Code of Criminal Procedure.

Off-duty Slaton police officer Ron McGlone went to a property located in Slaton at which he kept a horse. Appellant kept two horses on the same premises. Entering the barn on the property, the officer noticed that some feed was not stored as usual in a feed bin located in the barn. He raised the lid of the feed bin and noticed a black toolbox inside. On opening the toolbox he detected a strong odor and saw coke bottles with tubes coming out the top. Believing the items were connected with drug activity, he went to the police station and contacted his lieutenant, officer Timms. The officers returned to the scene. Both officers believed the items to be a part of a drug lab, so Timms notified the federal Drug Enforcement Administration. The officers then went to a location approximately a quarter of a mile away from the barn to wait for the DEA agents to arrive.

While the officers were waiting, they saw appellant and another individual arrive at the property in a pickup McGlone recognized as belonging to appellant. The officers' view of the entrance to the barn was obscured, but officer McGlone testified that appellant and his companion got out of the pickup and appeared to enter the barn. After about five minutes passed, they got back into the vehicle and attempted to leave the property. Timms pulled his unmarked police car behind the pickup to keep appellant from leaving the scene just as DEA agents Robertson and Bender arrived. The officers asked appellant to move his pickup off the street, up the driveway leading to the barn. Appellant complied, and his vehicle was blocked in by the officers' vehicles.

Agent Robertson told appellant he had obtained consent to search the barn.[2] Robertson asked appellant if there was anything in the barn that would be a safety concern. Appellant responded there was not. The DEA agents and Timms went inside the barn, looked inside the feed bin, and found items Robertson considered to be part of a methamphetamine lab.

When the agents came out of the barn, Robertson told appellant he found what he believed to be a "disassembled meth lab" inside the barn. Appellant responded that it was not his, but belonged to someone in Lubbock. At this point appellant and his passenger were placed in handcuffs. Officer McGlone searched appellant's vehicle and found a glass dish with an open pocketknife and residue in it. Robertson used a test kit to test the residue in the dish and it tested presumptively positive for methamphetamine. Appellant was arrested.

Appellant filed a motion to suppress the substance found in his truck and his statement made to agent Robertson. After a hearing, at which the State presented the testimony of McGlone, Timms and Robertson, the trial court denied the motion to suppress. Later, on appellant's motion, the trial court authorized the taking of the deposition of Mr. R. T. Farley, the owner of the premises. Appellant then filed a motion asking the court to reconsider its ruling on the motion to suppress, appending Farley's deposition. That motion also was denied.

---

[2]The consent was given by officer McGlone.

Generally, a trial court's ruling on a motion to suppress is reviewed by an abuse of discretion standard. *Oles v. State*, 993 S.W.2d 103, 106 (Tex.Crim.App. 1999); *Maddox v. State*, 682 S.W.2d 563, 564 (Tex.Crim.App. 1985). In reviewing trial court rulings on motions to suppress, we afford almost total deference to the trial court's determination of historical facts when it is supported by the record. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). When, as here, the trial court fails to file findings of fact, we view the evidence in the light most favorable to the trial court's ruling, and assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record. *See Carmouche v. State*, 10 S.W.3d 323, 328 (Tex.Crim.App. 2000). If the trial judge's decision is correct on any theory of law applicable to the case, the decision will be sustained. *State v. Ross*, 32 S.W.3d 853, 855-56 (Tex.Crim.App. 2000). At a suppression hearing, the trial court is the sole and exclusive trier of fact and judge of the credibility of witnesses and the weight to be given their testimony. *Id.* at 855.

Appellant argues in his first issue that the search of the feed bin located in the barn was illegal because McGlone did not have equal control and equal use of the property and therefore his consent to search was invalid.[3] Appellant's contention was that even though McGlone had access to the property, the feed bin was used exclusively by appellant and McGlone did not have permission to look inside the bin, or authority to consent to its search. McGlone, a patrolman and animal control officer for the City of Slaton, testified that

---

[3]The State contends appellant has not demonstrated a legitimate expectation of privacy in the feed bin and therefore lacks standing to object to its search. *See generally Villarreal v. State*, 935 S.W.2d 134 (Tex.Crim.App. 1996). We do not reach that contention, and will assume for purposes of this discussion appellant has standing.

he had given appellant permission to keep animals on the property because appellant had been keeping a horse at another location in town, in violation of a city ordinance. McGlone said the property's owner allowed him to use it in exchange for upkeep of the property. McGlone also testified he owned the feed bin and had placed it in the barn when he began using the property. He let appellant use the bin.

Appellant's argument on appeal is based primarily on Farley's deposition testimony, which conflicted with McGlone's testimony in some respects. Farley testified he gave appellant permission to put a horse on the property, but had not given McGlone permission to keep horses there. Farley said he previously had given McGlone permission to keep some goats on the property, but later asked him to remove the animals. Appellant concludes that McGlone had no permission to use the property and could not therefore have equal control and use of the barn or feed bin.

Whether McGlone had the right to use and occupy a particular area to justify his permitting officers to search that area is a question of fact. *Linnell v. State*, 767 S.W.2d 925, 927-28 (Tex.App.–Austin 1989, no pet.). Acknowledging the precept that appellate courts must defer to a trial court's resolution of issues that turn on the credibility and demeanor of witnesses, *see Guzman*, 955 S.W.2d at 89, appellant suggests that there is less need for us to defer to the trial court's evaluation of the relative credibility of McGlone's and Farley's descriptions of the arrangements between them with respect to McGlone's occupancy of the barn, because Farley did not appear before the trial judge and he was required to evaluate Farley's testimony through reading his deposition. While appellant may be correct that we are in as good a position as the trial court to read and evaluate

Farley's deposition testimony, the deference we owe to the trial court's fact-finding is not limited to facts based on live testimony. *Manzi v. State*, 88 S.W.3d 240, 243 (Tex.Crim.App. 2002) (appellate court defers to trial court's findings of fact even when they are based on affidavits rather than live testimony). Too, the trial court here at least was able to evaluate McGlone's credibility and demeanor first-hand and to consider Farley's deposition testimony in light of that evaluation. Moreover, even based solely on the "cold records" of McGlone's testimony and Farley's deposition testimony, the nature of Farley's testimony was such[4] that we could not say the trial court abused its discretion by accepting McGlone's testimony as true. The trial court's implied finding that McGlone had equal control over and use of the barn and feed bin, giving him capacity to consent to the search, is supported by the record. Appellant's first issue is overruled.

In his second issue, appellant argues that search of his vehicle without a warrant was illegal because it did not fall under any exception to the warrant requirement and was performed without probable cause. The State contends that the search was legal as a search incident to arrest.[5] We agree with the State.

When a police officer has made a lawful custodial arrest of the occupant of an automobile, the officer may, as a contemporaneous incident of that arrest, search the

---

[4]At the time of the deposition Mr. Farley was 87 years old. Because of poor health, he had not been to the property in some time. He expressed difficulty remembering some events. We note also that Farley's testimony he gave appellant, but not McGlone, permission to keep horses on the property is contradicted by the undisputed evidence that McGlone was keeping a horse there.

[5]The State also argues the officers had probable cause to believe appellant's vehicle contained contraband or the instrumentalities of a crime. We do not reach that argument.

passenger compartment of that automobile. *New York v. Belton*, 453 U.S. 454, 460, 101 S. Ct. 2860, 2864, 69 L. Ed 2d 768 (1981); *State v. Ballard*, 987 S.W.2d 889, 892 (Tex.Crim.App. 1999). An officer may also examine the contents of any containers found within the passenger compartment. *Belton*, 453 U.S. at 460.

Once an officer has probable cause to arrest, he may search the passenger compartment of a vehicle as a search incident to that arrest. *Ballard*, 987 S.W.2d at 892. Probable cause exists "at that moment the facts and circumstances within the officer's knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing the arrested person had committed or was committing an offense." *Guzman v. State*, 995 S.W.2d at 90. It is irrelevant whether the arrest occurs immediately before or after the search, as long as sufficient probable cause exists for the officer to arrest before the search. *Ballard*, 987 S.W.2d at 892; *Williams v. State*, 726 S.W.2d 99, 101 (Tex.Crim.App. 1986) (citing *Rawlings v. Kentucky*, 448 U.S. 98, 100 S. Ct. 2556, 65 L. Ed. 2d 633(1980)).

Prior to the search of appellant's vehicle,[6] DEA agents had observed in the feed bin items they considered to be a disassembled methamphetamine lab. Appellant was present on the property and had apparently left the barn shortly before the officers arrived. The officers knew that appellant had access to the barn and feed bin where the items were

---

[6]Appellant's brief suggests that the search of the interior of his pickup occurred while the DEA agents and Timms were in the barn, referencing a page in the reporter's record containing part of Robertson's testimony. By our reading of the record, Robertson's testimony is clear that the search of the pickup occurred after appellant was placed in handcuffs, after the agents and Timms returned from their search of the barn. Although McGlone's testimony about the sequence of events is unclear at points, it is consistent that the search of appellant's vehicle occurred after he was handcuffed.

found.[7]   When agent Robertson told appellant of the items' discovery, appellant made a statement indicating he had some knowledge of them. Under the circumstances present here, these factors linked appellant to the items, and gave the officers probable cause to arrest him for possession of drug paraphernalia in the form of the methamphetamine lab. *See* Tex. Health & Safety Code Ann. §§ 481.002(17), 481.108 and 481.125(a) (Vernon 2003 & Supp. 2004). *See generally Chavez v. State*, 769 S.W.2d 284, 288-89 (Tex. App.--Houston [1st Dist.] 1989, pet. ref'd) (listing facts and circumstances indicating an accused's knowledge and control of contraband).  The officer's subsequent search of appellant's truck was therefore lawful as a search incident to arrest. Appellant's second issue is overruled.

Appellant contends in his third issue that his oral statement to agent Robertson is inadmissable under article 38.22 of the Code of Criminal Procedure because the statement was made during a custodial interrogation prior to statutory warnings and without it being recorded.[8]   At the hearing on the motion to suppress, agent Robertson testified:

> Q.    Okay. Once you found these items in that grain bin, what did you do then, Agent Robertson?

---

[7]Officer McGlone, of course, had personal knowledge of appellant's use of the feed bin.

[8]Article 38.22, section 3(a)(2) provides, in part, that no oral statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless statutory warnings are given to the accused prior to the making of the oral statement. The accused also must knowingly, intelligently and voluntarily waive the rights set forth in the warnings. Tex. Code Crim. Proc. Ann. art. 38.22, § 3(a)(2) (Vernon Supp. 2004).

A.     I came back out–we came back outside. At that point, we know we have a contaminated area; therefore, there's certain procedures that we must follow for guidelines with DEA.

I came back outside, and I told [appellant] that we had found what I believed was a disassembled meth lab inside the barn. He said it's not mine. As a matter of fact, let me quote what he said. I've got it here in my report. Okay. He said it wasn't his, it was a guy's in Lubbock is what he said.

Q.     After he said that, did you continue on with the procedures that you were talking about?

A.     Yes, ma'am. At that–at that point, we had–we knew we had a possible methamphetamine lab there. We didn't know what else we had on the property, so at that time, we went ahead and through procedure, we handcuffed both persons.

On cross-examination, when appellant's counsel referred to the exchange as "that question," Robertson emphasized, "I didn't ask him. I just told him." Appellant argues that at the time of the exchange between Robertson and appellant, the officers nonetheless had focused their investigation on appellant, and had made it clear they believed he was responsible for the items they found in the barn. Additionally, because the officers believed they had probable cause to arrest appellant and did in fact arrest appellant,[9] he was in custody at the time he made the statement. Appellant also contends that he was responding to a question from Robertson.

The State does not deny appellant was in custody at the time of his statement to Robertson, but contends the statement did not stem from custodial interrogation because he volunteered the information. *See* Tex. Code Crim. Proc. Ann. art. 38.22 § 5 (Vernon

[9]Appellant also asserts that his statement to Robertson is inadmissable as the product of an illegal arrest. Our conclusion that officers had probable cause to arrest appellant disposes also of that assertion.

1979) (statute does not preclude admission of statement that does not stem from custodial interrogation).

Custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). The Supreme Court has distinguished between volunteered custodial statements and those made in response to interrogation:

> [T]he *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. . . . A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response.

*Rhode Island v. Innis*, 446 U.S. 291, 300-302, 100 S. Ct. 1682, 1689-90, 64 L. Ed. 2d 297 (1980).

We agree appellant's statement was not the result of questioning, or its functional equivalent, by Robertson. The State compares Robertson's statement with that addressed in *Camarillo v. State*, 82 S.W.3d 529, 534-36 (Tex.App.–Austin 2002, no pet.). While Robertson's remark that he had found what he believed was a methamphetamine lab in the barn is perhaps not properly characterized as "offhand," *id.* at 535, the statement

is not a question, and does not appear to have been calculated to elicit an incriminating response from the suspect.  Appellant's third issue is overruled.

The trial court did not abuse its discretion in denying appellant's motion to suppress and motion to reconsider the motion to suppress. The judgment of the trial court is affirmed.


James T. Campbell
Justice


Do not publish.