Opinion issued January 14, 2010




















In The
Court of Appeals
For The
First District of Texas







NO. 01-09-00224-CR
____________

AUSTIN WHITE, Appellant

V.

THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from the 3rd District Court
Anderson County, Texas
Trial Court Cause No. 29191
 

 
 
MEMORANDUM OPINION
          A jury found appellant, Austin White, guilty of the offense of possession of a
controlled substance in the amount of less than one gram


 and assessed his
punishment at confinement for ten years and a fine of $7,000.


 In two issues,
appellant contends that the evidence is legally and factually insufficient to support his
conviction. 
          We affirm.
Background
          Palestine Police Department (“PPD”) Corporal G. Rayford testified that while
he was on patrol on November 2, 2006, he observed a car, in which Julie Henry, the
driver, and appellant, the only passenger, were riding, make a left turn without
signaling. After Rayford activated the emergency lights on his patrol car, Henry
promptly pulled over and stopped her car. When Rayford approached Henry to get
her documents, he noticed a “slight smell of burnt marijuana.” After Rayford
returned to his patrol car to check Henry’s driver’s license and for outstanding
warrants, PPD Sergeant R. Johnson arrived to assist Rayford. 
          Rayford explained that after Johnson approached the passenger side of the car,
he heard Johnson say “‘spit it out’ several times in a raised voice.” Rayford then saw
Johnson struggling with appellant, who was in the front seat, so he went to help
Johnson. Johnson told Rayford that appellant had “something in [his] mouth.” Both
Rayford and Johnson testified that they were concerned that appellant would damage
or destroy whatever was in his mouth. After a brief struggle, they removed appellant
from the car and handcuffed him, but Johnson did not find anything in appellant’s
mouth. Rayford placed appellant in the back of his patrol car and sent Henry to wait
at the front of his patrol car while Johnson searched the car for the discarded item. 
          Johnson testified that he arrived on the scene to assist Rayford, and when he
went to make contact with appellant to ensure that he did not have a weapon, he saw
appellant “making sudden movements and just moving around a lot in the [car],” but
that “he could not tell where [appellant] was reaching.” When Johnson began talking
to appellant, he noticed that appellant had “some foreign object in his mouth.” He
ordered appellant to “spit it out.” Appellant told Johnson that “he had nothing in his
mouth,” but he then pulled what “appeared to be marijuana wrapped in something like
clear plastic” out of his mouth and immediately stuck it back in and began chewing. 
Johnson ordered appellant out of the car, but appellant did not exit immediately. 
Johnson testified that appellant “turned his whole body towards the driver . . . and
reached in his mouth and appeared to extract the marijuana,” at which point Johnson
assisted appellant out of the car. After removing appellant from the car, Johnson
found marijuana in a “clear wrapper” that was “wet” “between the driver’s seat and
the console” “within arm’s reach in the area where [appellant] turned.” Continuing
his search, Johnson found “under[neath] the back right portion of the passenger seat,
. . . [a] tan, small, little, ziplock type [baggie] that . . . contained a white powdered
substance” that was “within arm’s reach of [appellant].” He indicated that if the
“door was opened and you [scanned] that area, . . . [the baggie] was visible from that
point.” Johnson also found “under the front left corner of the driver’s seat,” “not
within arm’s reach of [appellant],”“a small green [baggie] similar to the tan one” that
contained “a white powder substance.” The substance in both baggies field tested
positive as cocaine, and laboratory tests confirmed the substance to be cocaine. 
          On cross-examination both Rayford and Johnson testified that they did not see
appellant physically possess the cocaine or exercise any custody, control, or
management over the baggie of cocaine found underneath the back right corner of the
passenger seat. Johnson further testified that “if somebody is just getting into the
vehicle, [he would not] have noticed [the baggie of cocaine under the passenger’s
seat].” He also admitted that the car was not appellant’s car; appellant was not
operating the car; and a non-cocaine user or non-police officer would not
“automatically know what was in [the baggie].” However, Johnson then explained
that “because [the baggie] was in [appellant’s] close proximity, due to his furtive
movements, . . . it was believed he attempted to conceal it from officers. He had
already exhibited an attempt to destroy or conceal the marijuana that he had in his
mouth.” 
Standard of Review
          We review the legal sufficiency of the evidence by considering all of the
evidence in the light most favorable to the verdict to determine whether any rational
trier of fact could have found the essential elements of the offense beyond a
reasonable doubt. Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007)
(citing Jackson v. Virginia, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 2788–89 (1979)). 
In doing so, we give deference to the responsibility of the fact-finder to fairly resolve
conflicts in testimony, to weigh evidence, and to draw reasonable inferences from the
facts. Id. To be legitimate or permissible, an inference must be deduced as a logical
consequence of the facts presented in evidence, and there must be a logical and
rational connection between the facts in evidence and the fact to be inferred. United
States v. Michelena-Orovio, 702 F.2d 496, 504 (5th Cir. 1983). An inference,
therefore, is a conclusion reached by considering other facts and deducing a logical
consequence from them. Hooper v. State, 214 S.W.3d 9, 16 (Tex. Crim. App. 2007). 
Juries may draw “multiple reasonable inferences as long as each inference is
supported by the evidence.” Id. at 15. Whether the “necessary inferences are
reasonable [is] based upon the combined and cumulative force of all the evidence
when viewed in a light most favorable to the verdict.” Id. at 17. Evidence in a
knowing possession of contraband case must amount to more than mere conjecture. 
Dickey v. State, 693 S.W.2d 386, 389 (Tex. Crim. App. 1984). Thus, speculation and
factually unsupported inferences are not allowed. Hooper, 214 S.W.3d at 15. 
Speculation, or conjecture, is mere theorizing or guessing about the possible meaning
of facts and evidence presented. Id. at 16. If circumstantial evidence provides no
more than a suspicion, a jury is not permitted to reach a speculative conclusion. Louis
v. State, 159 S.W.3d 236, 246 (Tex. App.—Beaumont 2005, pet. ref’d). This is true
because even though “[a] conclusion reached by speculation may not be completely
unreasonable, . . . it is not sufficiently based on facts or evidence to support a finding
beyond a reasonable doubt.” Hooper, 214 S.W.3d at 16. Therefore, proof that
amounts to only a strong suspicion or mere probability of guilt is insufficient to
sustain a conviction. Urbano v. State, 837 S.W.2d 114, 116 (Tex. Crim. App. 1992);
In re J.M.C.D., 190 S.W.3d 779, 781 (Tex. App.—El Paso 2006, no pet.); Hall v.
State, 86 S.W.3d 235, 240 (Tex. App.—Austin 2002, pet. ref’d); Grant v. State, 989
S.W.2d 428, 433 (Tex. App.—Houston [14th Dist.] 1999, no pet.). Our duty requires
us to “ensure that the evidence presented actually supports a conclusion that the
defendant committed” the criminal offense of which he is accused. Williams, 235
S.W.3d at 750. If the undisputed facts allow only one logical inference, neither jurors
nor the reviewing court may disregard those facts. Evans v. State, 202 S.W.3d 158,
162–63 (Tex. Crim. App. 2006). Although the parties may disagree about the logical
inferences that flow from undisputed facts, “[w]here there are two permissible views
of the evidence, the fact finder’s choice between them cannot be clearly erroneous.” 
Id. at 163 (quoting Anderson v. City of Bessemer, 470 U.S. 564, 574, 105 S. Ct. 1504,
1511 (1985)) (emphasis added).
          In a factual sufficiency review, we view all the evidence in a neutral light, both
for and against the finding, and set aside the verdict if the proof of guilt is so
obviously weak as to undermine confidence in the jury’s determination, i.e., that the
verdict seems “clearly wrong and manifestly unjust,” or the proof of guilt, although
legally sufficient, is nevertheless against the great weight and preponderance of the
evidence. Watson v. State, 204 S.W.3d 404, 414–15 (Tex. Crim. App. 2006). We
note that a jury is in the best position to evaluate the credibility of witnesses, and we
afford due deference to the jury’s determinations. Marshall v. State, 210 S.W.3d 618,
625 (Tex. Crim. App. 2006). Although we should always be “mindful” that a jury is
in the best position to decide the facts and that we should not order a new trial simply
because we disagree with the verdict, it is “the very nature of a factual-sufficiency
review that . . . authorizes an appellate court, albeit to a very limited degree, to act in
the capacity of a so-called ‘thirteenth juror.’” Watson, 204 S.W.3d at 414, 416–17. 
Thus, when an appellate court is “able to say, with some objective basis in the record,
that the great weight and preponderance of the (albeit legally sufficient) evidence
contradicts the jury’s verdict[,] . . . it is justified in exercising its appellate fact
jurisdiction to order a new trial.” Id. at 417.
Sufficiency of the Evidence
          In his first and second issues, appellant argues that the evidence is legally and
factually insufficient “to prove beyond a reasonable doubt that [he] exercised care,
control, or management over the cocaine and knew it was contraband” because “the
State failed to connect him to the cocaine, and failed to prove he even knew the
cocaine was in the car.”
          An individual commits the offense of possession of a controlled substance in
an amount of less than one gram if he knowingly and intentionally possesses the
controlled substance in the prescribed amount, by aggregate weight, including
adulterants or dilutants. See Tex. Health & Safety Code Ann. §§ 481.002(5),
481.102(3)(D), 481.115 (Vernon Supp. 2009). To prove possession of a controlled
substance, the State must prove that the accused (1) exercised control, management,
or care over the substance and (2) knew that the matter possessed was a controlled
substance. Evans, 202 S.W.3d at 161. Possession is a “voluntary act if the possessor
knowingly obtains or receives the thing possessed or is aware of his control of the
thing for a sufficient time to permit him to terminate his control.” Tex. Penal Code
Ann. § 6.01(b) (Vernon 2003).
          When, as here, a defendant is not in exclusive possession of the place where
contraband is found, additional independent facts and circumstances must link the
defendant to the contraband in such a way that it can be concluded that the accused
had knowledge of the contraband and exercised control over it. Roberson v. State,
80 S.W.3d 730, 735 (Tex. App.—Houston [1st Dist.] 2002, pet. ref’d). The evidence
must demonstrate that the link between a defendant and the contraband generates a
reasonable inference that the accused knew of the contraband’s existence and
exercised control over it. Id. In other words, the State must establish that the
defendant’s connection with the narcotics was more than just fortuitous. Poindexter
v. State, 153 S.W.3d 402, 405–06 (Tex. Crim. App. 2005). 
          The Texas Court of Criminal Appeals has explained that the purpose of the
“links” rule is to “protect the innocent bystander from conviction based solely upon
his fortuitous proximity to someone else’s [narcotics].” Id. at 406. The links rule
“simply restates the common-sense notion that a person—such as a father, son,
spouse, roommate, or friend—may jointly possess property like a house but not
necessarily jointly possess the contraband found in that house.” Id. (emphasis
added). Thus, “[w]hen the accused is not in exclusive possession of the place where
the substance is found, it cannot be concluded that the accused had knowledge of and
control over the contraband unless there are additional independent facts and
circumstances which affirmatively link the accused to the contraband.” Id. (quoting
Deshong v. State, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981)).
          Texas courts have identified “many non-exhaustive factors” that may
demonstrate a link to contraband. Roberson, 80 S.W.3d at 735. These factors include
(1) the accused’s presence when a search is conducted, (2) whether the narcotics were
in plain view, (3) the accused’s proximity to and the accessibility of the narcotics, (4)
whether the accused was under the influence of narcotics when arrested, (5) whether
the accused possessed other contraband or narcotics when arrested, (6) whether the
accused made incriminating statements when arrested, (7) whether the accused
attempted to flee, (8) whether the accused made furtive gestures, (9) whether there
was an odor of contraband or narcotics, (10) whether other contraband or narcotic
paraphernalia was present, (11) whether the accused owned or had the right to possess
the place where the narcotics were found, (12) whether the place in which the
narcotics were found was enclosed, (13) whether the accused was found with a large
amount of cash, and (14) whether the conduct of the accused indicated a
consciousness of guilt. Evans, 202 S.W.3d at 162 n.12. These factors constitute “a
shorthand way of expressing what must be proven to establish that [narcotics] were
possessed knowingly.” Roberson, 80 S.W.3d at 735. The number of linking factors
present is not as important as the “logical force” they create to prove that an offense
was committed. Id. 
          In support of his legal sufficiency challenge, appellant emphasizes that neither
Officer Rayford nor Sergeant Johnson saw him exercise custody, control, or
management over the cocaine; they did not have any indication that he knew the
baggie was in the car or what it contained; and “someone just getting into the vehicle
would probably not have noticed the baggie[].” The State counters that (1) the
cocaine was not completely concealed or hidden; (2) the cocaine was completely
accessible to appellant and found under the outside portion of the seat in which he
was seated and the cocaine was in close proximity to appellant; (3) an odor of
marijuana was in the car; (4) appellant possessed marijuana when he was arrested; (5)
appellant acted to destroy or conceal the marijuana, exhibiting a consciousness of
guilt; (6) appellant made furtive movements in the car; and (7) appellant denied
having anything in his mouth when he clearly had marijuana in his mouth.
Location of the Cocaine
          “An ‘affirmative link’ can be established when the contraband is in plain view
. . . or when the contraband is hidden in a place tied to the accused.” Poindexter, 153
S.W.3d at 409 n.24 (citing to Hughes v. State, 612 S.W.2d 581, 582 (Tex. Crim. App.
1981) and Mendoza v. State, 583 S.W.2d 396, 397 (Tex. Crim. App. 1979)). Johnson
found one of the baggies containing cocaine underneath the right back portion of the
passenger’s seat in which appellant was seated. Johnson saw the baggie only after
appellant had exited the car and Johnson thoroughly scanned the area behind the seat
with his flashlight. Although Johnson testified that “[i]f somebody is just getting in
the vehicle, [he probably would not] have noticed it,” Johnson found the baggie in a
place tied to appellant—underneath the back corner of the seat in which he was
sitting. We conclude that this factor provides a basis for a link between appellant and
the cocaine.
Proximity and Accessibility of Cocaine
          Convenient access to contraband is an accepted factor that may affirmatively
link an accused to contraband found in a vehicle. Deshong, 625 S.W.2d at 329. The
baggie of cocaine was found within close proximity of appellant—within his arm’s
reach, just under the back corner of the seat in which appellant was sitting. We
conclude that this factor provides a basis for a link between appellant and the cocaine. 
Odor of Marijuana
          The odor of contraband in a car is an accepted factor which may affirmatively
link an accused to seized contraband. Hurtado v. State, 881 S.W.2d 738,743 n.1
(Tex. App.—Houston [1st Dist.] 1994, pet. ref’d). Here, Rayford smelled the odor
of burnt marijuana when he first approached the car. This odor certainly links
appellant to the marijuana found between the console and the driver’s seat. However,
appellant was not convicted of possessing marijuana, but cocaine. Neither officer
testified that he smelled the odor of cocaine. We conclude that the odor of marijuana
does not serve as a link between appellant and the cocaine. See Robinson v. State,
174 S.W.3d 320, 327 (Tex. App.—Houston [1st Dist.] 2005, pet. ref’d) (odor of
marijuana did not constitute affirmative link between appellant and cocaine);
Washington v. State, 215 S.W.3d 551, 556 n.2 (Tex. App.—Texarkana 2007, no pet.)
(linking appellant to cocaine via odor of marijuana is illogical and does not assist in
assuring against convictions based on fortuitous proximity).
Furtive Movements
          Whether an accused made furtive gestures is a factor in showing that the
accused had knowledge of the contraband, as well as control over it. See Guiton v.
State, 742 S.W.2d 5 (Tex. Crim. App. 1987); Mills v. State, 847 S.W.2d 453, 455
(Tex. App.—Eastland 1993, pet. ref’d.). In Davis v. State, the defendant’s furtive
gestures specifically “going towards the bottom of the passenger’s seat” linked the
defendant to the contraband. 855 S.W.2d 855, 857 (Tex. App.—Eastland 1993, no
pet.). In Presswood v. State, the defendant passenger’s furtive gestures towards
underneath the passenger seat linked him to a pistol found there.


 548 S.W.2d 398,
399 (Tex. Crim. App. 1977). Here, Johnson testified that as he approached the car,
he saw appellant “making sudden movements and moving around a lot in the vehicle
. . . making a lot of quick sudden movements, which made [him] suspicious,” but
Johnson “could not tell where [appellant] was reaching at the time [he] approached.” 
The video of the traffic stop shows appellant moving around in the car seat before
Johnson arrived on the scene and as Johnson approached the passenger door of the
car. Given that the cocaine was found underneath the back right edge of the
passenger’s seat and the marijuana was first seen in appellant’s mouth and then later
between the console and the driver’s seat where appellant discarded it just before he
exited the vehicle, one could reasonably infer that appellant’s sudden and quick
movements before Johnson approached the car were to conceal narcotics generally,
and not only the marijuana. To conceal the marijuana in his mouth would not have
required appellant to move “around a lot” in the car. We conclude that this factor
provides a strong link between appellant and the cocaine found near his seat. 
Possession of Marijuana
          When Johnson initially approached appellant, he noticed that appellant had
something in his mouth that caused him to be suspicious that appellant was trying to
destroy evidence. Appellant denied having anything in his mouth but immediately
pulled out a clear plastic wrapper containing what Johnson identified as marijuana
and stuck it back in his mouth. When Johnson then told appellant to exit the car,
appellant turned towards the driver’s seat and removed the item from his mouth. 
Johnson found the still-wet, plastic-wrapped marijuana between the console and the
driver’s seat. Certainly, appellant exercised care, custody, control, and management
of the marijuana. Further, it has been held that possession of another type of
contraband than that charged is one of the potential factors that may link an accused
to the contraband in question. See Batiste v. State, 217 S.W.3d 74, 80 (Tex.
App.—Houston [1st Dist.] 2006, no pet.); Chavez v. State, 769 S.W.2d 284, 288 (Tex.
App.—Houston [1st Dist.] 1989, pet. ref’d); Olivarez v. State, 171 S.W.3d 283, 291
(Tex. App.—Houston [14th Dist.] 2005, no pet.). Here, appellant’s possession of one
narcotic, marijuana, along with his proximity to the cocaine in a place tied to him and
his furtive movements, serve as a link between him and the cocaine found near his
seat. 
 
Consciousness of guilt
          A “consciousness of guilt” is perhaps one of the strongest kinds of evidence
of guilt. It is a well accepted principle that any conduct on the part of a person
accused of a crime subsequent to its commission, which indicates a “consciousness
of guilt” may be received as a circumstance tending to prove that he committed the
act with which he is charged. Torres v. State, 794 S.W.2d 596, 598 (Tex.
App.—Austin 1990, no pet.). The making of false statements can be evidence of a
consciousness of guilt. See Cuong Quoc Ly v. State, 273 S.W.3d 778, 782 (Tex.
App.—Houston [14th Dist.] 2008, pet. ref’d). Actions indicating a consciousness of
guilt can be considered as factors helping to affirmatively link one to contraband. 
Roberson, 80 S.W.3d at740. In this case, appellant showed a consciousness of guilt
by misrepresenting that he did not have anything in his mouth, attempting to destroy
the marijuana by chewing it, and concealing the marijuana first in his mouth and then
in the car. Here again, appellant’s attempt to conceal the marijuana along with his
other furtive movements and consciousness of guilt serve to link appellant to the
cocaine found near his seat.
Conclusion
          Viewing the evidence in the light most favorable to the verdict, appellant was
the front seat passenger in a car in which a baggie of cocaine was found underneath
the back right corner of the seat in which appellant was sitting and after appellant had
made furtive movements within the car as Sergeant Johnson approached. The cocaine
was in close proximity to appellant, within his arm’s reach, and was found in a place
tied to appellant. Appellant, in addition to trying to conceal marijuana in his mouth,
made other furtive movements, which indicated his consciousness of guilt for
possession of narcotics generally, not just marijuana. From the logical force created
by these factors, we conclude that a rational trier of fact could have found that
appellant knowingly and intentionally possessed the cocaine beyond a reasonable
doubt. Accordingly, we hold that the evidence is legally sufficient to support
appellant’s conviction.
          In support of his factual sufficiency challenge, appellant emphasizes the same
evidence. Viewing all of the evidence neutrally, it is true that there is no testimony
from either Officer Rayford or Sergeant Johnson that they actually saw appellant
exercise care, custody, control, or management over the cocaine. However, strong
circumstantial evidence supports the jury’s finding that appellant knew of the cocaine
and possessed it. Again, he made furtive movements within the vehicle as Johnson
approached, and the cocaine was subsequently found in close proximity to appellant,
hidden in a place tied to appellant—underneath the seat in which he was sitting—and
easily accessible to appellant as he moved around. Accordingly, we hold that
appellant’s connection to the cocaine was more than just fortuitous such that
appellant’s conviction is not clearly wrong and manifestly unjust. See Poindexter,
153 S.W.3d at 405–06.
          We overrule appellant’s first and second issues.We affirm the judgment of the trial court.




                                                                        Terry Jennings 
                                                                        Justice

Panel consists of Justices Jennings, Higley, and Sharp.

Do not publish. Tex. R. App. P. 47.2(b).