

# NUMBER 13-14-00378-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

AROLODO DAVID AGUILAR
A/K/A AROLDO DAVID AGUILAR,                                      Appellant,

**v.**

THE STATE OF TEXAS,                                             Appellee.

**On appeal from the 9th District Court
of Montgomery County, Texas.**

## MEMORANDUM OPINION

**Before Justices Benavides, Perkes and Longoria
Memorandum Opinion by Justice Perkes[1]**

---

[1] Pursuant to a docket-equalization order issued by the Supreme Court of Texas, the appeal has been transferred to this Court from the Ninth Court of Appeals in Beaumont, Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2015 R.S.).

Appellant Arolodo David Aguilar, a/k/a Aroldo David Aguilar appeals his conviction of possession with intent to deliver/manufacture a controlled substance, enhanced by two prior felony convictions.   *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(f) (West, Westlaw through 2015 R.S.).   A jury found appellant guilty and the trial court assessed punishment at life imprisonment in the Texas Department of Criminal Justice, Institutional Division.   *See* TEX. PENAL CODE ANN. § 12.42(c) (West, Westlaw through 2015 R.S.)   By two related issues, appellant argues:   (1) the evidence is legally insufficient to support the jury's verdict; and (2) the evidence is legally insufficient to establish an affirmative link between appellant and the cocaine.   We affirm.

## I.   BACKGROUND

Jose Vazquez, his brother Angel Vazquez, and Lauro Rincon met with an undercover Drug Enforcement Agency (DEA) agent at the Downtowner Motel in Houston in an effort to arrange the sale of twenty kilos of cocaine.   Photographs of the meetings show Jose in possession of a black duffel bag.   At the motel, undercover officers provided Jose, Angel, and Rincon with a black SUV equipped with hidden compartments to transport the cocaine.   State and federal officers then followed the Vazquez brothers to a house on Laura Lane in Montgomery County.   Photographs of the house showed the black SUV parked near a maroon van.   Aerial surveillance revealed several men, including appellant, standing in the background of the Laura Lane house, then going inside the house.   While Angel was at the house, he sent a picture of three kilos of cocaine on a blue bedspread to an undercover Houston police officer.   Angel and Rincon

2

then met with agents at a local restaurant to finalize the sale of the cocaine, but the meeting turned confrontational and the deal fell through.

Agents then learned that a maroon van, possibly carrying drugs, was leaving the stash house and alerted Montgomery County Sheriff's Deputy Ken Wakefield. Deputy Wakefield spotted the van, and when he noticed the van's missing front license plate, he initiated a traffic stop. Appellant was driving the van while its registered owner, Rolando Gutierrez, was in the front passenger seat. Gutierrez explained that he was the owner of the van, but that appellant was driving since he did not have a license. Jose Vazquez was seated behind them, near two suitcases and a black duffel bag.

According to Wakefield's testimony, the three men appeared to be "fairly nervous," and when Wakefield asked a "general question," they "looked around like they were trying to come up with an answer." Wakefield then briefly questioned appellant, who said that he was "just looking for cars" to sell, and when asked about "this guy here"—presumably Jose Vazquez—he said that the man "came with us" and that they knew him "from the valley." Appellant agreed with Wakefield that they were "driving around randomly looking for cars," and when asked if they checked "newspapers or what," he responded, "yea, garages and things." Gutierrez told Wakefield that he was related to appellant, that they both arrived in the Houston area one day before, and that they both had known Vazquez for a long time. Vazquez, however, claimed that he only met Gutierrez and appellant recently. When Officer Wakefield asked Vazquez what they were up to, Vazquez replied, "Uh, trouble with my wife, job, friend[']s idea. . . [d]o something different." He

elaborated that he was "waiting for a friend, he [sic] come and pick me up . . . [w]e gonna [sic] see a few thing, I don't know too much about this."

Wakefield was suspicious of the men's stories, and Gutierrez gave Wakefield consent to search the van. The suitcases contained clothes, but the black duffel bag contained ten individually wrapped kilo packages of cocaine. Several of the packages were sealed with black shrink wrap and marked with a sticker of a cartoon animal. Appellant had $90 in cash on his person, in addition to two Visa cards; Vazquez had $1.05 and a one-way bus ticket from McAllen, purchased on February 20, 2013; and Gutierrez had $610 in cash. The search also revealed numerous cell phones and SIM cards; however, none of the devices showed that appellant communicated with any of the men electronically. Officers searched the house on Laura Lane, but did not recover any cocaine. Officers did find, however, duct tape and other packing materials, scales, and a blue bedspread similar to the one seen in the photograph of the cocaine.[2]

## II.    DISCUSSION

By two issues, appellant argues that "the evidence is legally insufficient, if, upon reviewing the evidence in the light most favorable to the verdict, no rational juror could have believed beyond a reasonable doubt that appellant is guilty of Possession of a Controlled Substance," and, "the evidence is legally insufficient, to establish an affirmative link between appellant and the cocaine." Appellant's arguments pertain only to the

---

[2] At approximately the same time as Wakefield's stop of the maroon van, officers arrested Angel and Rincon and took possession of the black SUV. There is no testimony that any drugs or other evidence was present in the black SUV.

element concerning whether he possessed the controlled substance.  As such, we limit our appellate review to that issue.

## A.    Standard of Review

"The standard for determining whether the evidence is legally sufficient to support a conviction is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *Johnson v. State*, 364 S.W.3d 292, 293–94 (Tex. Crim. App. 2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see Brooks v. State*, 323 S.W.3d 893, 898–99 (Tex. Crim. App. 2010) (plurality op.).  "The jury is the exclusive judge of the credibility of the witnesses and of the weight to be given testimony, and it is also the exclusive province of the jury to reconcile conflicts in the evidence."  *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000) (en banc) (citing *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996) (en banc)).  Juries are permitted to make reasonable inferences from the evidence presented at trial, and circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor.  *Hooper v. State*, 214 S.W.3d 9, 14 (Tex. Crim. App. 2007).

We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge.  *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) (en banc)).  Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for

which the defendant was tried. *Id.* In order to convict appellant of possession with intent to deliver, the State must prove appellant: (1) exercised care, custody, control, or management over the controlled substance; (2) intended to deliver the controlled substance to another; and (3) knew that the substance in his possession was a controlled substance. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a)–(f) (West, Westlaw through 2015 R.S.).

**B.  Applicable Law**

The State may prove possession by direct or circumstantial evidence, and "it must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous." *Poindexter v. State*, 153 S.W.3d 402, 405–06 (Tex. Crim. App. 2005) (quoting *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995) (en banc)). When the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless additional independent facts and circumstances affirmatively link the accused to the contraband. *Id.* (citing *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981)). An affirmative link may be established through either direct or circumstantial evidence. *Brown*, 911 S.W.2d at 747.

Texas courts have recognized the following links as being sufficient, either singly or in combination, to establish a person's possession of contraband: (1) the defendant's presence when a search was conducted; (2) whether the contraband was in plain view, *Hughes v. State*, 612 S.W.2d 581, 582 (Tex. Crim. App. 1981); (3) whether the contraband was recovered from a hidden location accessible only to one who exercised

6

control over the house or car, *Mendoza v. State*, 583 S.W.2d 396, 397 (Tex. Crim. App. 1979); (4) the defendant's proximity to and the accessibility of the narcotics; (5) whether the defendant was under the influence of narcotics when arrested; (6) whether the defendant possessed other contraband or narcotics when arrested; (7) whether the defendant made incriminating statements when arrested; (8) whether the defendant attempted to flee; (9) whether the defendant made furtive gestures; (10) whether there was an odor of contraband; (11) whether other contraband or drug paraphernalia were present; (12) whether the defendant owned or had the right to possess the place where the drugs were found; (13) whether the place where the drugs were found was enclosed; (14) whether the defendant was found with a large amount of cash; and (15) whether the conduct of the defendant indicated a consciousness of guilt. *Evans v. State,* 202 S.W.3d 158, 161–62 (Tex. Crim. App. 2006). Although several factors relevant to establishing an affirmative link may have been identified, the number of factors actually supported by the evidence is not as important as the "logical force" they collectively create to prove that a crime has been committed. *Roberson v. State*, 80 S.W.3d 730, 735 (Tex. App.—Houston [1st Dist.] 2002, pet ref'd) (quoting *Whitworth v. State*, 808 S.W.2d 566, 569 (Tex. App.—Austin 1991, no pet.)).

### C.    Analysis

Appellant argues that the only factors linking him to the cocaine was that he was the driver of the van and was present when the cocaine was discovered.[3] Appellant reasons that without any other factors, mere presence is not enough to establish care,

---

[3] It is undisputed that appellant did not own the van where the drugs were found.

custody, and control. Appellant contends that the cocaine was found in a black duffel bag in the back seat next to Jose—presumably the same black duffel bag Jose was carrying at the Downtowner Motel. He claims that because the cocaine was located in the backseat and in a duffel bag, the cocaine was not readily accessible. Appellant further contends that there is no evidence that he was present at any of the previous meetings between the agents and Rincon and Angel, and that there is no evidence: (1) that he was under the influence of drugs when he was arrested; (2) that he possessed contraband or other narcotics when he was arrested; (3) that he made incriminating statements, that he attempted to flee; or (4) that he made furtive gestures.

While we agree with appellant that certain "affirmative links" are not applicable in this case, we disagree with his conclusion that the State failed to link him to the cocaine. We must examine each case on its own facts. *Hurtado v. State*, 881 S.W.2d 738, 743 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). A factor tending to establish sufficiency in one set of facts may be of little value in another set of facts. *Robinson v. State*, 174 S.W.3d 320, 326 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd).

The State's first link came through testimony from police officers explaining that the cocaine was packaged for transport and sale by a sophisticated drug trafficking organization (DTO). Houston Police Officer Jose Benavides explained that Houston is the main "corridor" for drugs coming from Mexico. That the large amount of cocaine was recovered near the Houston area and packaged in kilogram bricks could lead to a rational conclusion that the cocaine was meant for distribution in other markets.

8

Next, DEA Special Agent Joel Saldana and Officer Benavides testified that DTOs were generally distrustful of outsiders, and would not have allowed someone unfamiliar with the prospective transaction—and the existence of some $300,000 worth of cocaine— to drive a vehicle containing such a large amount of cocaine. Based on the testimony from the experienced police officers, a rational juror could have concluded that the DTO responsible for bringing ten kilograms of cocaine for sale would never involve an unaffiliated third party in the transportation of the valuable load.

The State also linked appellant to the cocaine through his relationship with Jose Vazquez. Jose Vazquez was present when Angel Vazquez and Rincon negotiated with an undercover officer for the cocaine sale and took possession of the black SUV rigged with secret compartments. Later, video surveillance showed appellant in the backyard of the house on Laura Lane with Jose Vazquez and Gutierrez. When questioned by Officer Wakefield, Gutierrez, appellant, and Jose Vazquez gave inconsistent stories about how long they knew each other, and what they were doing. Appellant's and Vazquez's conflicting statements demonstrate an attempt to conceal their activities and the real reason they came to Montgomery County. In other words, their conflicting statements were meant to distance themselves from the crime. *See Robinson v. State*, 174 S.W.3d 320, 328 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) ("[I]nconsistent statements raise the inference that they were engaged in illegal activity—here, the possession of cocaine with the intent to deliver—that establishes a connection to appellant's knowledge of the presence of the cocaine."); *see also Duff v. State*, 546 S.W.2d 283, 288 (Tex. Crim. App. 1977) (differing stories, coupled with other circumstantial evidence, are a "circumstance

9

implying guilt"). We conclude that appellant's and Vazquez's inconsistent statements raise the inference they were engaged in illegal activity that establishes a connection to appellant's knowledge of the presence of the cocaine. *See Robinson*, 174 S.W.3d at 328.

Finally, the State linked appellant to the possession of the cocaine based on the amount confiscated by police. The amount of contraband may be effective at establishing an affirmative link when large quantities are involved. *Id.* (two kilograms of cocaine indicates affirmative link); *see Villegas v. State*, 871 S.W.2d 894, 897 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) (finding quantity of contraband sufficient to establish affirmative link in a case involving seizure of 90 pounds of cocaine and 165 pounds of marijuana). Agent Saldana testified that the cocaine purchase he negotiated was for twenty kilograms of cocaine at $35,500 per kilogram. Using this testimony, ten kilograms of cocaine is worth $355,000. We consider the ten kilograms of cocaine a significant amount and too much for mere personal use. Thus, the amount of cocaine is strongly indicative of an affirmative link between it and appellant. *See Robinson*, 174 S.W.3d at 329.

In summary, appellant was driving a van found to be transporting ten kilograms of cocaine worth more than three hundred thousand dollars. Appellant's travel to the Houston area, ostensibly to purchase cars, coincided with a major drug purchase orchestrated by one of the van's passengers, Jose Vazquez. Vazquez was involved with a drug trafficking organization moving contraband through the Houston area. When asked about their travels, appellant and Vazquez gave conflicting accounts. We

10

conclude that the evidence was legally sufficient to affirmatively link appellant to the cocaine. We further conclude that a jury could have found beyond a reasonable doubt that appellant exercised actual care, custody, control, or management of the cocaine. *See id.* Appellant's two issues are overruled.

### III. CONCLUSION

We affirm the trial court's judgment.

GREGORY T. PERKES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
19th day of May, 2016.